Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner *v.* Federated Security, Inc. and Commonwealth of Pennsylvania, Board of Claims, Respondents.

412

Argued November 16, 1979, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Kellen McClendon,* Assistant Attorney General, for petitioner.

*Michael D. Foglia,* for respondent.

OPINION BY JUDGE MACPHAIL, February 22, 1980:

The Department of Public Welfare (DPW) brings this appeal from an order of the Board of Claims (Board)[1] entering judgment in favor of Federated Security, Inc. (Federated) and against DPW in the amount of $47,493 with interest. DPW raises two

_____

[1] Prior to October 5, 1978, the Board was known as the Board of Arbitration of Claims. *See* Section 1 of the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §4651-1.

issues for our consideration: whether the Board lacked jurisdiction over these proceedings because Federated failed to file its claim within six months from the date when the claim accrued as mandated by Section 6 of the Act of May 20, 1937 (Act), P.L. 728, *as amended,* 72 P.S. §4651-6, and whether, if the Board did have jurisdiction, its order was not in accordance with law. For the reasons which follow, we hold that Federated's claim was untimely and that the Board was without jurisdiction. Accordingly, we reverse the order of the Board and order that Federated's complaint against DPW be dismissed.

Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704, requires us to affirm the order of the Board unless we find that the order was in violation of DPW's constitutional rights, was not in accordance with law, was in violation of certain required procedures, or was not supported by substantial evidence. The factual history of this case is crucial to our decision.

The food stamp program is administered within the Commonwealth by DPW. On June 20, 1974, DPW and Federated, a corporation engaged in the business of providing security services relating to the receipt, storage, and delivery of tangible items, entered into a contract which provided that Federated would receive and store food stamps and would distribute them to specified banks. The contract, which was to run from July 1, 1974 until June 30, 1975, was in two parts: Federated was to receive $68,364 for delivering the food stamps and $16,740 for storing them over the twelve month period. Following commencement of the contract, a total of $58,430,000 worth of food stamps was delivered to Federated.

Between July and October of 1974, DPW was advised by Federated that there had occurred unaccounted for shortages of food stamps totalling $47,-

500.[2] On October 17, 1974, DPW wrote a letter to Federated in which it discussed the shortages, advised Federated of a forthcoming audit of the food stamp inventory, and stated that Federated's outstanding invoices (for the months of September and October) would not be paid until the shortage problem was resolved.[3] In response to that letter, Federated orally informed DPW that it would make no more food stamp deliveries to banks until payment for those months was received. On October 30, 1974, DPW wrote to Federated stating that it was terminating the contract because Federated refused to make deliveries and because of the ''corporation's poor performance thus far under this contract.'' Federated refused to relinquish possession of the food stamps it held until it received the payment it argued it was due, i.e. delivery and storage charges for September and October, 1974, and storage charges for all subsequent months. In December, 1974, DPW proposed that Federated reimburse DPW for the missing food stamps and turn over the remaining stamps to DPW. In return, DPW proposed to reimburse Federated for the September and October expenses in addition to storage charges between November and the date that transfer was made to DPW. Despite the fact that Federated said it would turn over the stamps to DPW upon payment of the costs accrued, an agreement between the two was never reached.

On March 23, 1976, Federated filed the instant proceeding before the Board seeking damages in the amount of $36,959.16 in addition to $1,395 per month

---

[2] At the hearing on this matter, it was uncontested that the amount of shortage actually totalled $88,750.

[3] DPW asserts that it had the right pursuant to the express terms of the contract to withhold payment for late and/or incorrect deliveries. We need not resolve whether DPW had such a right or whether it exercised the right properly.

plus 1 per cent service charge for each month that the food stamps remained in Federated's possession. On or about July 14, 1976, DPW filed a suit in replevin with the Court of Common Pleas of Allegheny County for recovery of the food stamps. The replevin action was later discontinued and Federated returned the food stamps to DPW in September. On or about November 12, 1976, DPW filed a suit in assumpsit in the Court of Common Pleas seeking to recover from Federated the value of the food stamp shortage. On October 25, 1978, the Board entered judgment for Federated on its claim and DPW filed this appeal.

DPW's first argument is that the Board lacked jurisdiction over Federated's claim because it was not timely filed. Federated, in turn, argues that the timeliness of the complaint was not properly at issue before the Board and is not properly before this Court because DPW failed to raise the statute of limitations defense by way of preliminary objections or new matter in the answer to the complaint and, therefore, waived the right to raise it later. *See* Pa. R.C.P. No. 1032. DPW asserts, however, that the six months limitation period goes to the subject matter jurisdiction of the Board and, therefore, is a non-waivable issue. Contrary to DPW's position, our Supreme Court in *Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 515-16, 397 A.2d 779, 785 (1979), made clear that the limitations period is not a matter of jurisdiction over the subject matter, but rather one of jurisdiction over the parties and, accordingly, that it is waivable. Before determining whether DPW did waive the limitations defense, however, we must determine which law applies.

The complaint in this proceeding was filed on March 23, 1976. The answer was filed on April 30, 1976. On both of those dates and until October 5,

1978, Section 8 of the Act, 72 P.S. §4651-8, read in pertinent part: "All *hearings* before the board shall be public and shall be governed by all of the rules of Pennsylvania Civil Procedure not inconsistent with this act." (Emphasis added.) On October 5, 1978, long after the pleadings had been closed and the hearing held[4] and only twenty days before the Board entered its order, Section 8 was amended to read, "All hearings before the board or hearing panel shall be public. All *matters* before the board or hearing panel shall be governed by all of the rules of Pennsylvania Civil Procedure not inconsistent with this act." (Emphasis added.) The prior Section 8 had been consistently interpreted to apply the rules of civil procedure *only to hearings* before the Board. *See Stevenson v. Department of Revenue*, 41 Pa. Commonwealth Ct. 618, 622-23, 399 A.2d 1180, 1182 (1979); *UEC, Inc. v. Board of Arbitration of Claims*, 12 Pa. Commonwealth Ct. 54, 58, 314 A.2d 521, 523-24 (1974). Despite the fact that 4 Pa. Code §121.1 provided that "[A]ll proceedings in an action before the Board of Arbitration of Claims shall be, as nearly as possible, in accordance with the Pennsylvania Rules of Civil Procedure relating to the action of Assumpsit," we confined the application of the rules to hearings and did not extend them to pleadings or other proceedings before the Board. The law as it existed at the time that DPW was preparing to answer Federated's complaint, that is in March and April of 1976, clearly did not require DPW to raise the issue of the statute of limitations then or forever waive the right to raise it.[5] It would be entirely unjust for us to hold that

---

[4] The hearing was held on March 22 and 23, 1977.

[5] Indeed, prior to the Supreme Court's 1979 opinion in *Department of Public Welfare v. UEC, Inc.* it had at least been implied by the Court that jurisdictional questions raised by Section

DPW waived its right to raise the limitations defense because it followed existing law and failed to comply with a law enacted almost two and a half years following the filing of its answer merely because the new requirement was enacted three weeks before an order was issued in this case. Instead, we hold that Section 8 of the Act, 72 P.S. §4651-8, as it existed prior to October 5, 1978 is applicable to this case and we further hold that DPW did not waive the right to raise the statute of limitations defense in the post-pleading stages of this proceeding.

We now turn to the merits of the statute of limitations question. Section 6 of the Act, 72 P.S. §4651-6, states that ''The board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued.'' The Board found that Federated's claim did not accrue until the food stamps were transferred back to DPW in September, 1976, and that the claim was, therefore, filed in a timely manner. We disagree.

We have consistently held that for the purposes of Section 6 the jurisdictional period begins to run at the time that the cause of action accrues and that the cause of action accrues when the injured party is *first able to litigate the claim.* *C. J. Langenfelder & Son, Inc. v. Department of Transportation,* 44 Pa. Commonwealth Ct. 585, 592-93, 404 A.2d 745, 750 (1979); *Allen N. Lashner, Inc. v. Department of Highways,* 1 Pa. Commonwealth Ct. 486, 489, 275 A.2d 403, 405 (1971). A party is first able to litigate a claim when he or she knows the amount due under the claim. *Penn-Jersey Contractors, Inc. v. General State Au-*

6 of the Act were matters of subject matter jurisdiction, and, therefore, not waivable. *See Commonwealth v. Orsatti, Inc.,* 448 Pa. 72, 77 n. 1, 292 A.2d 313, 316 n. 1 (1972).

*thority,* 12 Pa. Commonwealth Ct. 203, 208-09, 315 A.2d 920, 923 (1974). The Board apparently interpreted this provision as requiring that all expenses be precisely and finally known before a complaint is filed. Accordingly, since the amount in question here could not have been known until DPW removed its food stamps from Federated's control the Board found that the claim would not accrue until that date. There are two flaws with that analysis.

First, from the date that DPW indicated to Federated that DPW would withhold payment from Federated until the food stamp shortage was reconciled, October 17, 1974, there was never any doubt concerning how much Federated was owed. On that date and on October 30, 1974 when DPW terminated the contract, Federated was due delivery and storage expenses for September and October amounting to $11,223. Subsequent to October 30, Federated would have been owed $1,395 per month for storage. The only question was how many months Federated had stored the stamps. A simple mathematical computation by the Board could have resolved such a question.[6] We need not decide whether Federated's claim actually accrued on October 17, 1974 or October 30, 1974 since neither date falls within six months of March 23, 1976, the date on which the complaint was filed.

Second, it would be highly inequitable to allow Federated to determine its own statute of limitations merely by refusing to relinquish possession of the stamps. It is undisputed that DPW had tried to

---

[6] We note that because the complaint was filed by Federated before the food stamps were removed from its possession, Federated moved at the hearing to amend its complaint to include the charges for the additional months of storage in its request for relief.

make arrangements for the removal of the food stamps and that Federated would not cooperate until it received what it believed it was owed. Irving L. Barmak, President of Federated, made clear at the hearing why Federated did not return the food stamps to DPW. In answer to the question "[I]f your corporation didn't want the stamps, why didn't they just tell the Commonwealth to come pick them up?" Barmak responded, "Well, we felt that if we held the stamps till our money was paid, we would get paid. In other words, we trusted the Commonwealth like they trusted us." N.T. 181 (March 22, 1977). It is regrettable that Federated feared that it would never be paid if it returned the food stamps to DPW. Such a fear, however, did not justify Federated's taking the matter into its own hands and, in effect, holding the food stamps as ransom until it was paid. The correct procedure, of course, would have been for Federated to file a complaint with the Board of Claims within six months from the accrual of the cause of action.

Based upon the facts of this case and the law as it is to be applied to those facts, we hold that Federated's complaint against DPW was not filed with the Board in a timely manner. Accordingly, we reverse the order of the Board and order that the complaint be dismissed.[7]

### Order

And Now, this 22nd day of February, 1980, the Order of the Board of Claims entered on October 25, 1978, is reversed and the complaint of Federated

---

[7] Because we have determined that the complaint was untimely filed and that the Board was without jurisdiction to rule on this matter, we need not determine whether the Board's ruling on the substantive contractual matter was correct.

420

Security, Inc. against the Commonwealth of Pennsylvania, Department of Public Welfare is dismissed.

This decision was reached prior to the death of President Judge BOWMAN.

Judge DISALLE did not participate in the decision in this case.