625 A.2d 198

**PHILANTHROPIC CONSULTANTS,
INC. d/b/a Dalewood, Petitioner,**

v.

**DEPARTMENT OF GENERAL SERVICES and
Department of Public Welfare, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 29, 1993.

Decided May 5, 1993.

Petition for Allowance of Appeal Denied Sept. 22, 1993.

Carleton O. Strouss, for petitioner.

Jose E. Morales, for respondents.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Philanthropic Consultants, Inc., d/b/a Dalewood (Philanthropic), petitions for review of a Commonwealth Board of Claims decision denying its claim for damages against the Commonwealth, Department of General Services (DGS) and Department of Public Welfare (DPW) (or, collectively, Commonwealth respondents).

The pertinent facts which gave rise to this claim are not in dispute. Philanthropic owns a two-story commercial building, the Dalewood building in Uniontown. In December of 1988, DPW, acting through DGS, entered into a lease agreement for four rooms (approximately 9,500 square feet) on the second floor of that building for the purpose of storing a large number of inactive DPW client files.

In February of the following year, Lawrence Surdoval, president of Philanthropic, inspected the leased space and noticed structural damage to the building. The day following Surdoval's inspection, Philanthropic hired an engineer to determine the extent, if any, of structural damage caused by DPW's stacking of boxes in excess of normal load conditions.

By letter of March 1, 1989, Philanthropic notified Ms. Claire Morrison of the DPW Fayette County Office that DPW's storage of file boxes was possibly causing structural damage to the building. Ms. Morrison acknowledged receipt of the letter and requested that all future correspondence be directed to DPW officials in Harrisburg. Thereafter, on March 16, the structural engineer presented his report to Philanthropic, stating that excessive "deflection and deformation" of the structure had occurred as a result of DPW's storage arrangements. The report recommended that excessive loads be removed and repairs be made. Ms. Morrison then notified Philanthropic that DPW would be vacating the building. On March 29, 1989, the director of the Bureau of Real Estate,

DGS, notified Philanthropic that it was cancelling the lease effective April 30, 1989.

According to Philanthropic's statement of claim, the Commonwealth respondents breached an implied covenant in its lease when DPW vacated the premises and the respondents failed to return the property to Philanthropic in the same condition as found upon entering it. The statement of claim includes a claim for restoration damages of $63,000 based on a repair estimate given to Philanthropic on April 7, 1989, as well as claims for lost rent to the end of the lease's term and during repair. Philanthropic also asserted in its statement of claim that it had made every reasonable effort to contact the appropriate Commonwealth officials and to reach an amicable settlement of its claim but that not until May 1990 did DGS inform Philanthropic that its claim was denied. Philanthropic filed a statement of claim on July 31, 1990.

As we have said, none of the facts are in dispute, and none of the Board's factual findings are challenged as lacking in evidentiary support. The strictly legal questions we must decide are whether the Board erred in concluding that Philanthropic's claim is barred because its cause of action accrued prior to the six-month statute of limitations on contract actions against the Commonwealth and whether the Board erred in concluding the Commonwealth respondents cannot, by their representations and actions, be equitably estopped from asserting the statute of limitations defense against this claim.

 We begin our inquiry from the premise that the Board is without jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued. Section 6 of the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. § 4651–6. This jurisdictional period begins to run from the time the cause of action arose, and that is when the injured party is first able to litigate the claim. A party is able to litigate a claim when the amount due under the claim is known. *Department of Public Welfare v. Federated Security, Inc.,* 49 Pa.Commonwealth Ct. 411, 411 A.2d 284 (1980). A claim against the Commonwealth

does not accrue until a claimant is able to prepare a detailed statement of the claim as required by section 6 of the Act.[1] *Department of Community Affairs v. Craftech International, Ltd.,* 72 Pa.Commonwealth Ct. 162, 456 A.2d 247 (1983).

Based on these propositions of law, Philanthropic contends that its cause of action did not accrue until well within six months of filing its July 31, 1990 statement of claim because it was not able to litigate the claim any sooner than May 24, 1990, when Charles Anderson of DGS informed Philanthropic's counsel by letter that it could not "make an equitable adjustment for your client." Citing several decisions of this court, Philanthropic asserts it was unable to litigate its claim because it could not calculate the amount due under the claim until the Commonwealth respondents thus affirmatively denied its demand for payment. We must disagree.

Philanthropic insists that a claim cannot accrue until the Commonwealth has affirmatively and unequivocally refused payment. We are aware that the cases on which Philanthropic relies have recognized the date of the Commonwealth's affirmative notification of its refusal to pay as the date on which a claim accrued. In *Department of Public Welfare v. Ziegler,* 117 Pa.Commonwealth Ct. 79, 542 A.2d 226 (1988), we held that the petitioner's claim was barred because it was not filed within six months of a DPW notification letter denying petitioner's claim. In *Jewish Employment and Vocational Service v. Department of Public Welfare,* 117 Pa.Commonwealth Ct. 581, 544 A.2d 95 (1988), we held that the claim was not timely because it was not filed within six months of DPW's letter informing the provider that it would not authorize full payments without invoices. In *Department of Public Welfare*

1. Section 6 is set forth in pertinent part:

The board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued. The claimants shall advise the department involved in writing of such claim, specifying the details thereof, and shall, within the same period, file with the secretary of the board a concise and specific written statement of this claim, signed and verified by the claimant before an officer authorized to administer oaths.

*v. School District of Philadelphia,* 107 Pa.Commonwealth Ct. 117, 527 A.2d 1094 (1987), we concluded that the date on which DPW officials notified the school district that it would withhold certain sums allegedly due under a contract was the date on which the claim accrued, despite subsequent correspondence between the parties. In each case, this Court held that, even using the date of affirmative refusal, the claim was barred. However, there was no contention in those cases, as there is here, that the claim accrued *before* the date of the Commonwealth's refusal. Thus, none of those cases reached the question before us today—whether a claim is timely when filed within six months of the Commonwealth's affirmative notice of refusal to pay, without reference to earlier instances when "the injured party is first able to litigate the claim." *Federated Security,* 49 Pa.Commonwealth Ct. at 417, 411 A.2d at 288.[2]

Paragraph nineteen of Philanthropic's statement of claim alleges that, "upon vacating . . . the Defendant Commonwealth of Pennsylvania failed to repair the damage it caused . . . and, therefore, violated the implied covenant in the . . . lease to return the property to [Philanthropic] in the same condition in which the property was received, reasonable wear and tear excepted." (See also paras. 24–27).[3] In *Craftech,* where a contract called for the Commonwealth to pay for construction of certain temporary structures, it was held that the Depart-

---

**2.** We note only two cases in which commonwealth respondents asserted that a claim accrued prior to an affirmative notification of refusal to pay. In *Department of Revenue, Bureau of State Lotteries v. Irwin,* 82 Pa.Commonwealth Ct. 266, 475 A.2d 902 (1984), we held that the state bureau's letter to a claimant advising the withholding of payment and requesting him to take no action pending investigation did not cause a claim to accrue. In *Department of Public Welfare v. Ludlow Clinical Laboratories, Inc.,* 64 Pa.Commonwealth Ct. 178, 439 A.2d 242 (1982), we held that the statute began to run not when the contracted-for work was completed but when invoices for that work were refused. Neither case stands for the proposition that a claim *cannot* accrue until there is an affirmative refusal to pay.

**3.** There is no allegation that DPW breached the contract by failing to pay specified amounts to which it obligated itself in the lease agreement. When considering when a claim accrues, we should not confuse refusal to pay damages consequent to a breach with refusal to pay for services or goods.

ment of Community Affairs' purposeful actions and refusal to clarify under which of two termination clauses it was cancelling the contract prevented a contractor from knowing the measure (and therefore the amount) of damages the contractor was claiming. By contrast, nothing the Commonwealth respondents did prevented Philanthropic from knowing how much damage was caused by DPW's failure to return the leased premises in good repair upon vacating. Paragraph twenty-eight of the statement of claim summarizes the damages Philanthropic suffered:

> 28. In sum, the structural damage to the Dalewood Building has resulted in the following damages to PCI: the cost of preparing the Exhibit G McMillen Report ($576.00); the cost of repairing the Dalewood Building ($63,000.00); the second floor rental value for the Dalewood Building from May 1, 1989 to June 1, 1990 ($3,900.00); and the potential lost rental income from the Dalewood Building's first floor ($450.00) and second floor ($300.00), in the event PCI repairs the structural damage.

 Each of these items of damage was known to Philanthropic by no later than April 30, 1989, the date Philanthropic received notice of cancellation of the lease. Damages for lost rental value were easily calculated as of that date; in addition, Philanthropic had received the engineering inspection invoice on April 10 and a repair estimate on April 7. In any event, expenses need not be precisely and finally known before a claim accrues; when a contract is terminated and the amount due under that contract can be calculated, a party is able to litigate the claim. *Federated Security*, 49 Pa.Commonwealth Ct. at 417–418, 411 A.2d at 288. The correct procedure is then to file a claim within six months. *Id.* at 419, 411 A.2d at 288.

Philanthropic filed its statement of claim well over a year after it became aware of the damages resulting from the Commonwealth respondents' alleged breach of the implied covenants in the lease. Thus, absent other circumstances, the Board of Claims is clearly without jurisdiction.

■ Philanthropic nevertheless maintains that by virtue of the actions of their officials and employees, the Commonwealth respondents have by equitable estoppel waived the statute of limitations defense to Philanthropic's claim. Philanthropic asserted in its statement of claim that it made every effort "to reach an amicable settlement of [its] claim" and that "DGS and the Department of Public Welfare continually negotiated ... from March of 1989 until May of 1990...." " (statement of claim, para. 23). Philanthropic argues vociferously that the Commonwealth's conduct—its bureaucratic shuffling of the claim from one agency official to another, its delay and avoidance—caused Philanthropic reasonably to relax its vigilance in asserting a claim.

While it is true that estoppel can be properly applied to prevent the Commonwealth from asserting the six-month bar against claims, *Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779 (1979), we must agree with the Board that the doctrine is not aptly applied in this case.

In *UEC,* a dispute arose after the Commonwealth cancelled a contract under which UEC would be paid to provide program development, staff training and management for a system of model day care centers. Despite cancellation of the contract, Commonwealth officials advised that negotiations to extend the contract would be reopened and the provider agreed to maintain operations. A series of agreements was reached, but a dispute remained as to the balance due UEC under the contract. Ultimately, the Commonwealth refused to compensate UEC.

In holding that the Commonwealth was estopped from asserting the statutory six-month bar, our Supreme Court recognized that the facts pled clearly warranted application of the doctrine.

High Commonwealth officials, including the Secretary of DPW and its General Counsel, *repeatedly gave UEC their assurances that the Commonwealth would compensate them (UEC) under the contract ... At no point has the Commonwealth ever denied liability for the debt* owed UEC. Quite

the contrary, the conduct of Commonwealth officials ... was entirely *consistent with an admission of liability for the debt* ... Even after the audit was completed, the Commonwealth continued to assure UEC of its *intention to pay* its obligation, lulling them into a false sense of security regarding the necessity for initiating legal action.

*Id.* at 513–514, 397 A.2d at 784 (emphasis added).

Philanthropic candidly admits that the Commonwealth respondents' conduct here was not as egregious as that in *UEC,* but we think that, between this case and *UEC,* the difference is not only in degree but also in kind.

■ There, the provider pled that the Commonwealth's repeated assurances led it to believe that the Commonwealth would perform as it had agreed. Here, Philanthropic asserts that the Commonwealth's bureaucratic "run around" misled Philanthropic into believing it would eventually be compensated for damages. However, none of Philanthropic's exhibits to its statement of claim or the testimony indicates that the Commonwealth respondents acknowledged liability for the alleged damages. No conduct or representations by the Commonwealth respondents concealed facts necessary for Philanthropic to institute its claim so that estoppel would apply. Where there is no misrepresentation by Commonwealth officials as to the status of a claim, the doctrine of equitable estoppel does not apply, *Ziegler,* and merely continuing to correspond with a claimant after cancelling a contract does not constitute a waiver of the statute of limitations defense. *Solar Construction Company, Inc. v. Department of General Services,* 105 Pa.Commonwealth Ct. 609, 525 A.2d 28 (1987).

While for the most part the case law suggests that a claim does not accrue until payment is refused,[4] and we have found no authority which is precisely on "all fours" with the circumstances we find here, this case presents a good example of how in some instances a claim can accrue notwithstanding the absence of an affirmative refusal to pay.

4. *See, e.g.,* the recent case of *Del–Car Automotive, Ltd. v. Pennsylvania State Police,* —— Pa.Commonwealth Ct. ——, 624 A.2d 262, (1993).

Certainly the better practice is to file a claim as soon as a litigant can prepare a concise statement, specifying in it as much detail as possible.

One other matter is worthy of note. The Board in a "Narrative" addendum to its opinion expresses sympathy for those whose claims are dismissed because of the statute, and seems to lament this Court's disposition to require strict adherence to it. The statute itself is, of course, legislatively and not judicially created, and this Court is not free to ignore legal authority or find illogical escape routes from it because of any understandable sympathy we might share with the Board. If claimants or, indeed, the Board itself believe the statute works a harsh result, then their recourse lies with the legislature.

Affirmed.

## ORDER

AND NOW, this 5th day of May, 1993, the order of Commonwealth Board of Claims at Docket No. 1460, dated September 9, 1992 is hereby affirmed.