**DARIEN CAPITAL MANAGEMENT, INC., Petitioner,**

v.

**PUBLIC SCHOOL EMPLOYES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 1995.

Decided Nov. 15, 1995.

Jerome J. Shestack, for petitioner.

James J. Kutz, for respondent.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Darien Capital Management, Inc. (Darien) appeals a Board of Claims (Board) decision dismissing as untimely Darien's claim for an "incentive fee" of $3,090,972 plus interest against the Pennsylvania Public School Employes' Retirement System (PSERS).

The Board found the following facts. Darien manages investments for pension funds. In mid–1990, it contracted to manage an "option over-writing account" for PSERS. The contract provided that PSERS would pay Darien an incentive fee equal to twenty percent of any profits earned by Darien for PSERS, less certain deductions. A project amount, which provided the basis for the incentive fee, was to be calculated as of the last day of each calendar year. The contract also provided a "base management fee" of $62,500 per quarter to be paid to Darien regardless of the results it obtained from its investments.

As of December 31, 1990, the profits shown in Darien's program totalled $23,543,984. Darien sent an invoice for twenty percent of that amount, which, as adjusted, resulted in a total incentive fee amount due of $4,121,296. On March 5, 1991, Darien sent PSERS a proposed addendum providing for a change in the calculation of the incentive fees, whereby twenty-five percent of net incentive fees owed at the end of each calendar quarter would be payable. The addendum was never executed by either party. On March 6 or March 8, 1991, Darien sent to PSERS a revised invoice for $1,030,324, which was twenty-five percent of the incentive fee calculated as of December 31, 1990. The invoice was paid. On April 1, 1991, Darien invoiced PSERS for Darien's 1991 first quarter base management fee of $62,500, which PSERS paid. In June 1991, the second quarter base management fee of $62,500 was also invoiced and paid. In October 1991, the third quarter base management fee was invoiced and paid.

By letter dated December 18, 1991, Darien notified PSERS that it was forwarding a bill for the $3,090,973 unpaid portion of the 1990 incentive fee. This was Darien's first invoice or other attempt to collect the balance of the incentive fee since the twenty-five percent invoice of March 6 or 8, 1991. In February 1992, PSERS advised Darien that the contract was terminated. Darien filed its claim with the Board in March 1992.

The Board dismissed Darien's claim based on the six-month statute of limitations for filing claims. Section 6 of the Act of 1937, May 20, P.L. 728, No. 193, *as amended,* 72 P.S. § 4651–6 (Act) ("[t]he [B]oard shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued"). As PSERS notes, the Board stated in its opinion:

> We find that PSERS had no intention of paying approximately Three Million Dollars ... to Darien and it appears that Darien had no intention of attempting to collect the ... $3,000,000.00 from PSERS until December 18, 1991, or at least long after such sum was due. Darien certainly knew, or should have known how much was due and payable to it under the Agreement in March, 1991, and if it intended to pursue collection of the contractual amount owed, it should have proceeded with collection arrangements at that time.

(Board opinion, March 28, 1995, pp. 6–7). Darien now appeals to this Court.

■ Our scope of review is limited to determining whether the Board's factual findings are supported by substantial evidence or whether the Board committed an error of law. *Department of Transportation v. Herbert R. Imbt, Inc.,* 157 Pa.Cmwlth. 573, 630 A.2d 550 (1993).

### Statute of Limitations

■ Darien first argues that its claim is timely because it was filed in March 1992, approximately one month after PSERS first definitively advised Darien that the claim was denied. It cites *Crawford's Auto Center, Inc. v. Pennsylvania State Police,* 655 A.2d 1064 (Pa.Cmwlth.1995), for the proposition that the statute of limitations does not begin to run until the claimant is affirmatively notified that an invoice will not be honored. This doctrine, Darien argues, is well established. *See Del–Car Automotive, Ltd. v. Pennsylvania State Police,* 154 Pa.Cmwlth. 535, 624 A.2d 262 (1993); *Department of Public Wel-*

*fare v. Town Court Nursing Center, Inc.,* 97 Pa.Cmwlth. 380, 509 A.2d 950 (1986), *petition for allowance of appeal denied,* 515 Pa. 595, 528 A.2d 603 (1987); *Department of Revenue, Bureau of State Lotteries v. Irwin,* 82 Pa. Cmwlth. 266, 475 A.2d 902, 905 (1984) ("[a] claim accrues ... when payment is due and is withheld by the Commonwealth.... The statute of limitations runs from the time the claimant is affirmatively notified that he will not be paid"); *Department of Public Welfare v. Ludlow Clinical Laboratories, Inc.,* 64 Pa. Cmwlth. 178, 439 A.2d 242, 244 (1982) ("statute of limitations did not begin to run until Ludlow was affirmatively notified by DPW that its invoices were not going to be honored").

Darien attempts to distinguish *Philanthropic Consultants, Inc. v. Department of General Services,* 155 Pa.Cmwlth. 460, 625 A.2d 198, 203 (1993), *petition for allowance of appeal denied,* 535 Pa. 650, 633 A.2d 154 (1993) (footnote omitted) (emphasis added), cited by the Board, where we stated:

> While for the most part the case law suggests that a claim does not accrue until payment is refused ... this case presents a good example of how *in some instances a claim can accrue notwithstanding the absence of an affirmative refusal to pay.* Certainly the better practice is to file a claim as soon as a litigant can prepare a concise statement, specifying in it as much detail as possible.

In that case, Philanthropic leased four rooms of a building to the Pennsylvania Department of Welfare (DPW). DPW cancelled the lease on April 30, 1989. Philanthropic had received a repair estimate on damages to the rooms on April 7, 1989 and an inspection invoice on *April 10, 1989.* Philanthropic alleged that it made every reasonable effort to contact the appropriate officials and reach an amicable settlement of its claim against DPW for the damages, but that the claim was not denied until May 1990. Nevertheless, we agreed with the Board that Philanthropic's claim, filed in *July 1990,* well over a year after the alleged April 1989 breach, was untimely.

Here, Darien contends that, during the year between the submission of the initial invoice for the incentive fee and PSERS' denial of the claim, PSERS paid a twenty-five percent installment; PSERS initiated and continued negotiations to amend its fee arrangement with Darien; Darien continued to render services; PSERS drafted an amended agreement recognizing Darien's right to the balance of the fee; and negotiations were terminated without the signing of the amendment. Darien asserts that it would be absurd to require it to file a claim against PSERS while still rendering contractual services to it and while both parties were negotiating toward an amicable resolution of unresolved differences.

PSERS responds that Darien is merely presenting its own version of the facts. It submits that the Board's facts show Darien knew the amount due under its claim, and could and did prepare a detailed statement of its claim in January 1991. Thus, the claim, filed in March 1992, is untimely. *Philanthropic.* It asserts that, as the Board stated, Darien decided not to press its claim in order to preserve a long-term relationship with PSERS. PSERS argues that the claim certainly accrued in March 1991, when Darien submitted the twenty-five percent invoice. At the latest, PSERS argues, the claim accrued in April 1991, which is the time Darien's president testified he refused to agree to retroactive application of a proposed revision to the incentive fee agreement. Last, PSERS attempts to distinguish *Crawford's, Ludlow* and *Town Court.*

■ Given the conflicting legal arguments of the parties on timeliness, we shall attempt to set forth clearly the law in this area. The six-month limitations period must begin when the "claim ... accrued," which is when the injured party is first able to litigate its claim—that is, when that party is able to prepare a detailed statement of the claim. *Davis v. Pennsylvania,* 660 A.2d 157 (Pa. Cmwlth.1995); *Philanthropic; Department of Public Welfare v. Federated Security, Inc.,* 49 Pa.Cmwlth. 411, 411 A.2d 284 (1980); *Department of Community Affairs v. Craftech International, Ltd.,* 72 Pa.Cmwlth. 162, 456 A.2d 247 (1983).

Darien's argument that a claim cannot accrue until the Commonwealth has affirma-

tively and unequivocally refused payment was expressly rejected in *Philanthropic*. We explained in *Philanthropic* that the date of payment refusal *may* be the date a claim accrues, but is not necessarily *always* the determinative date of when a claim accrues. Indeed, we held that the date the claim accrued in that case was *before* the date payment was refused. In so holding, we explained that no prior case held that a claim cannot accrue before the date payment is refused. Put another way, we essentially reiterated that a claim can accrue *no later than* the date of an affirmative refusal to pay the claim.[1]

At this point, two cases not addressed in *Philanthropic* remain for discussion. The first is the most recent case of *Davis*. There, two claimants alleged that the termination of their employment constituted a breach of their employment contracts. We cited *Philanthropic* with approval and held that their claims accrued on the date that the claimants were terminated.

The second case is *Crawford's*, on which Darien relies. That case, like *Del–Car*, is distinguishable from the one now before us in a critical sense. In deciding timeliness there, while we did expressly base our holding on the fact that the Commonwealth never notified the plaintiff that charges would not be honored, there was no express contract establishing a schedule of payment for services. In *Del–Car*, we held that an unequivocal denial of payment is a triggering date, but did not hold that it is always *the* triggering date. Likewise, we did not hold in *Crawford's* that the date of denial is the only triggering date irrespective of earlier instances of claim accrual—such as the date on which a detailed statement of charges is or can be prepared. Thus, *Crawford's* should be read as a case wherein, for reasons specific to that case, and in particular because no

written contract existed, we expressly ruled that the claim had not accrued because payment refusal had not occurred, and we implicitly decided that the claim had not otherwise accrued.

A review of the facts in *Crawford's* confirms that this is so. There, Crawford's was directed by the Pennsylvania State Police (PSP) to tow and store allegedly stolen vehicles and vehicle parts beginning in or about June 1982. As we have said, of paramount importance, there was no written contract between the parties. In July 1984, a tractor cab was released from Crawford's storage facilities and the PSP and an insurance company at that time agreed to pay Crawford's for the towing and storage. Crawford's sent a statement to the PSP in *July 1985*, seeking $67,204 as reimbursement for towing and storage. For several months thereafter, Crawford's sent statements to the PSP each month, adding $2,250 for monthly storage charges to the past due balance. By the time Crawford's filed its complaint against the PSP in *December 1985*, Crawford's total charges amounted to $78,454. At that point, PSP had still not affirmatively refused payment.

Thus, unlike in the case before us, a detailed statement of charges was first presented within six months of the filing of the claim for those charges. We also note that it was not certain that the amount billed by Crawford's reflected the reasonable value of its services. There was no written contract in *Crawford's* and there was a past practice of Crawford's recovering its charges from a variety of sources, including from the sale of vehicles, which in that case did not occur until *1986*, due in part to PSP's delay. There was therefore no way to determine what or when amounts were due.

---

1. Thus, the earlier cases of *Del–Car, Irwin, Town Court* and *Ludlow* do not stand for the proposition for which Darien cites them. *See Philanthropic*. By way of example, we note that in *Ludlow*, the limitations period did not begin to run until affirmative notification of a claim refusal because *"[i]t was at that time that Ludlow first knew the amount allegedly due under the claim, and was thus in a position from which it could litigate."* *Ludlow*, 439 A.2d at 244 (emphasis added). In addition, we held in *Del–Car*, a case in which no express agreement for payment was ever made between the Pennsylvania State Police and the claimant towing contractor, that, because an unequivocal denial of a claim was given to the claimant more than six months before the claim was filed, the claim was time-barred. We did *not* hold in *Del–Car* that the denial of a claim is the *only* event that triggers the limitations period.

Under these circumstances, we did not accept PSP's argument that Crawford's claim accrued earlier because it could have immediately detailed its charges when it actually towed and stored the vehicles. We instead emphasized the absence of an affirmative refusal, a more common indicator of claim accrual in the case law, and one that logically would be looked at in a case where no written contract exists. Therefore, our statement in *Crawford's* that "[b]ecause Crawford's was never notified that its charges would not be honored, the statute of limitations does not bar Crawford's action," must be read in the factual context of that case. Clearly, it would be improper to read *Crawford's* as overruling earlier cases such as *Philanthropic* or holding that the limitations period can never begin until the Commonwealth unequivocally refuses payment.

In sum, this case is like *Philanthropic* in that there is a contention that a claim accrued before the Commonwealth affirmatively denied payment of the claim. It is also like *Philanthropic,* as well as *Davis,* insofar as the amount of the claim was known and due well beyond six months before the claim was filed. In fact, Darien presented a detailed statement of charges more than six months before the claim was filed. Also, directly at variance with *Crawford's,* there is a written contract, which included a fee schedule, making apparent the time that the contract was breached; further, the amount of the charges is readily ascertained from the contract, and there is no past practice of waiting to recoup charges. The conclusion from the facts in this case that the "claim ... accrued" more than six months before the claim was filed with the Board is simply inescapable. We hold that Darien's claim accrued under the contract in January 1991, before any unequivocal denial of its claim and more than six months before the claim was filed.

*Equitable Estoppel*

■ Darien's second argument in this appeal is that, based on the occurrences during the year before the claim was filed—e.g., continued services and negotiations—PSERS is estopped from asserting that the limitations period ran during the course of negotiations. It cites *Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779 (1979), as directly on point. Darien contends that, similar to the situation in *UEC,* PSERS never denied liability, continued seemingly amicable negotiations and accepted Darien's ongoing services.

PSERS responds by citing our discussion in *Philanthropic* in which we distinguished it from *UEC* on the basis that, in *Philanthropic,* there was no material misrepresentation by the defendant as to the status of a claim. PSERS asserts that estoppel principles are equally inapplicable here and, accordingly, do not save Darien's claim, filed more than six months after it accrued, from being untimely.

■ We agree with PSERS' position. Estoppel is applied " '[i]f through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry.' " *UEC,* 483 Pa. at 512, 397 A.2d at 784 (citations omitted). Such a description does not fit this case.

■ It is true that " 'fraud or concealment' necessary to establish a case for application of estoppel ... does not mean fraud or concealment in 'the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception.... It is not the intention of the party estopped but the natural effect upon the other party which gives vitality to an estoppel.' " *UEC,* 483 Pa. at 513, 397 A.2d at 784 (citations omitted). It is also true that in this case PSERS made partial payment of the incentive fee and never denied liability for the fee, which are relevant factors under *UEC.*

However, the partial payment in this case was made one year before the claim was filed. Thus, although estoppel may be properly applied on the partial payment in March 1991, there is nothing to justify its continued application thereafter.[2] This is especially

2. Even if the March 1991 payment were somehow construed as a quarterly payment under the proposed amendment on the incentive fees, the next quarterly payment would be due in June 1991, nine months before the claim was filed.

true given the testimony of Darien's president that, as of April 1991, his position was "non-negotiable" with regard to any retroactive modification of incentive fee language as it applied to the fees already earned. (Notes of Testimony (N.T.), September 21, 1993, pp. 147–154; Deposition of Gregory M. Hryb, March 17, 1993, pp. 93–94, 101–102).

■ Further, nothing PSERS did impeded Darien from bringing its claim to enforce its contractual rights as early as January 1991. It may be that Darien was attempting an amicable arrangement for an alternative payment schedule; this accords with the Board's suggestion that Darien exercised forbearance in collection in order to preserve a long-term relationship. Nonetheless, as the Board correctly concluded, that is not a basis for estoppel. Nor does it change the facts that, under the only executed contract, Darien could have filed its claim at any time and PSERS, at least after March 1991, did not induce or even ask Darien to forego filing the claim.

If, as it contends, Darien was negotiating the timing of payments for amounts due and owing, then, no matter what its intentions, it did so at its own risk. As in *Philanthropic*, no conduct or representations by PSERS concealed facts necessary for Darien to institute its claim. Nor were any misrepresentations made. Contrary to the salient facts in *UEC*, PSERS did not repeatedly assure Darien that it would compensate Darien under the contract or continually assure Darien of its intention to pay the obligation. PSERS simply failed to pay the balance of the contractual amount due and invoiced at the end of 1990. The negotiations in *UEC*, moreover, resulted in an audit that was necessary to establish the balance owed, something that was known in this case for well over a year before a claim was filed.

■ "The burden of proving the existence of ... fraud or concealment is upon the asserting party by evidence that is clear,

precise and convincing.... It is also well established that mere negotiations toward an amicable settlement afford no basis for an estoppel, nor do mistakes, misunderstandings or lack of knowledge in themselves toll the running of the statute ..." *UEC*, 483 Pa. at 512–513, 397 A.2d at 784 (citations omitted). Under the facts found by the Board, we conclude that the Board correctly declined to apply estoppel in this case.

### Remaining Allegations of Error

Darien's final argument is that the Board's decision was inconsistent, not based on the record and replete with error. It contends that the Board's citations to the record do not support finding of fact number twenty-five, which states that Darien did not invoice or otherwise attempt to collect the balance of the incentive fee between March 8 and December 18, 1991. It also contends that the finding ignores events during that period, including nine months of numerous discussions and negotiations, continued services, as well as the lack of change in PSERS' conduct and its failure to deny payment.

Darien further alleges that conclusions of law numbers five and six are not based on detailed findings of fact. It also disputes certain statements in the Board's opinion, such as the assertion that the payment of twenty-five percent of the incentive fee showed that no further fee would be paid. Moreover, Darien argues that, in determining timeliness, the Board improperly relied on the fact that Darien sought interest from December 31, 1990. It reiterates that its delay in filing its claim was due to ongoing negotiations over the timing of the payment, not the Board's "fanciful" explanation that Darien deferred demanding payment to avoid the "high possibility" that PSERS would terminate the contract.[3]

---

3. Last, Darien maintains that the Board was improperly constituted. It states that David Clipper was not a member of the Board during the hearings on this matter, that he stated on the record he was an acting administrative law judge and would not rule on the merits, but that he nevertheless was one of three Board member signatories to the order in this case following his nomination and confirmation as the Board's chief administrative judge. Darien briefly and generally challenges this situation as a violation of the Act. However, we have reviewed the Act and perceive no violation. Further, the Act provides that "[t]wo members of the [B]oard shall constitute a quorum." 72 P.S. § 4651–1.

■ Most of Darien's arguments are answered by the well established principle that the Board is the ultimate fact-finder. *Imbt.* In stating a number of "omitted" facts, suggesting what the Board "should have found" and positing certain explanations, Darien is suggesting facts when neither it nor this Court can usurp the Board's exclusive function.

■ Further, Darien's specific argument that the record citations do not support finding of fact number twenty-five is overly technical and, in any event, incorrect. The Board accurately cites pages in the record where Darien's president testified that he presented no invoices or other demand for payment between March and December 1991; as noted above, his explanation for not doing so was that there were ongoing negotiations, yet he stated that, as of April 1991, his position was "non-negotiable" as to the incentive fees already earned. (N.T., September 21, 1993, pp. 147–154; *see also* N.T., September 22, 1993, pp. 332–333; Deposition of Gregory M. Hryb, March 17, 1993, pp. 93–94, 101–102). This testimony is sufficient for a fact-finder to conclude that Darien did not invoice or otherwise attempt to collect the balance of the incentive fee between March and December 1991.

Darien's other specific challenges also fail to establish reversible error. We think it is evident that the Board's findings are sufficiently detailed to support its conclusions of law numbers five and six, and we substantially agree with those conclusions, that the limitations period began to run when Darien was entitled to be paid an incentive fee for 1990, that Darien's forbearance in collection did not toll the limitations period, and that Dar-

ien knew the amount of its claim, which did not change from March 1991 to March 1992.

■ We do agree with Darien that the Board erred in finding that neither party anticipated the incentive fee balance would be paid following payment of twenty-five percent of the fee in March 1991. There is evidence from a witness for PSERS that PSERS did not anticipate payment, but Darien consistently maintained it thought it would be paid in some manner. We believe nonetheless that this error is harmless in light of our previous resolution of the questions of when the claim accrued and why estoppel is not applied in this case, and in light of the fact that Darien's alleged expectations were not prompted by any conduct on PSERS' part after the March 1991 payment. Additionally, we agree with Darien that the Board should not have looked to Darien's claim for interest from December 31, 1990 as evidence that the claim was untimely. Again, however, this was harmless, since the claim was in fact due on that date. The necessary findings, conclusions and rationales are all present in the Board's decision.

■ Based on the foregoing discussion, we conclude that the Board's decision was proper under the law. Accordingly, the Board's order is affirmed.[4]

### *ORDER*

AND NOW, this 15th day of November, 1995, the order of the Board of Claims, at No. 1624, dated March 28, 1995, is hereby affirmed. It is further Ordered that Petitioner's Application to Impose Costs on Re-

---

4. One final matter is before us. On October 5, 1995, Darien applied to this Court for the imposition of certain reproduced record costs on PSERS. Darien alleges in its application that, for its appeal here, it designated only certain portions of the certified record for reproduction (volume 1) and PSERS then designated the entire record for reproduction (volumes 2 and 3). According to Darien, volumes 2 and 3 are irrelevant, but since PSERS' counsel was on vacation, Darien accommodated PSERS and, further, paid $2875 for reproduction, even though PSERS had not tendered payment of that amount under Pa. R.A.P. 2154 and 2155.

PSERS did not respond to Darien's application as of the time of argument. However, it appears from Pa.R.A.P. 2155 that Darien's initial remedy was not to reproduce that matter it thought unnecessary without being advanced payment within ten days of written demand for payment. Moreover, we have found that portions of volumes 2 and 3 supply pages missing from volume 1 and bear directly on the relevant occurrences and circumstances in 1991. We therefore deny the application.

spondent Pursuant to Pa.R.A.P. 2155(b) is hereby denied.