700 A.2d 395

**DARIEN CAPITAL MANAGEMENT, INC., Appellant,**

v.

**COMMONWEALTH of Pennsylvania, PUBLIC SCHOOL EMPLOYES' RETIREMENT SYSTEM, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1997.

Decided Aug. 20, 1997.

1

Gerald Gornish and Jerome J. Shestack, Philadelphia, for Darien Capital Management, Inc.

James J. Kutz and Joseph D. Shelby, Harrisburg, for the Commonwealth, Public School Employes' Retirement System.

Before FLAHERTY, C.J. and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

CAPPY, Justice.

We granted allocatur limited to the issues of whether the Commonwealth Court erred in concluding that the applicable statute of limitations had expired prior to the filing of Appellant Darien Capital Management, Inc.'s ("Darien") claim, and whether the principle of estoppel is applicable to this case. Because the applicable statute of limitations had not expired

prior to the filing of Darien's claim, we reverse the order of the Commonwealth Court and remand to the Board of Claims (the "Board") for further proceedings consistent with this opinion.

Darien manages investments for pension funds. Beginning in July, 1989, Darien provided services for Appellee Pennsylvania Public School Employes' Retirement System ("PSERS"). Darien and PSERS entered into an agreement, executed by Darien on July 20, 1990, pursuant to which Darien would manage an "option over-writing account" for PSERS. This agreement had a term of five years, but could be terminated by either party upon thirty days written notice. The agreement provided that Darien would receive a minimum annual "base management fee" of five basis points, which amounted to $62,500 per quarter, regardless of the results Darien obtained from its investments, and an "incentive fee" equal to 20% of any profits earned by Darien for PSERS, less certain deductions. The profit amount on which the incentive fee was to be based would be calculated on the last day of each calendar year.

The profits shown in Darien's program on December 31, 1990, totalled $23,543,984.00. On or about January 4, 1991, Darien sent an invoice to PSERS for $4,591,297.00, which represented 20% of the profits earned as of December 31, 1990.[1] PSERS reviewed the invoiced amount and, after audit, both parties agreed that the actual amount of the incentive fee should be $4,121,297.00.

PSERS had doubts about Darien's investment style and doubts about the whole incentive fee being calculated on only one day of the year. As a result of PSERS's concerns, on March 5, 1991, Darien sent to PSERS a proposed addendum to the agreement providing for a change in the method of calculation of the incentive fee, whereby 25% of net incentive fees owed at the end of each calendar quarter would be

1. Specifically, this amount was calculated by applying the 20% to the remainder after subtracting the base fee paid to Darien from July 1, 1988, from the total profits.

payable.[2] This addendum was never executed by either party.[3]

On March 6 or 8, 1991, Darien sent to PSERS a revised invoice for $1,030,324, which was 25% of the incentive fee calculated as of December 31, 1990. PSERS, through the Treasury Department, paid the invoice on March 22, 1991.

Darien continued to provide services to PSERS through 1991. On April 1, 1991, Darien invoiced PSERS for Darien's first quarter base management fee in the amount of $62,500. PSERS paid this invoice. PSERS also paid Darien's quarterly invoices for the base management fees in July, 1991, and October, 1991.

Ultimately, on December 18, 1991, Darien sent an invoice to PSERS for the $3,090,973 unpaid portion of the 1990 incentive fee.[4] Following receipt of Darien's invoice, PSERS decided to terminate the agreement. On February 7, 1992, PSERS, by letter, advised Darien that its services were terminated. On or about February 11, 1992, PSERS's chief counsel informed

2. The addendum stated:
   The following represents a change in only the fee calculation portion of the contract.
   Incentive fees owed to the manager shall be calculated quarterly at the end of each calendar quarter according to the existing method and 25% of the fee owed shall be paid to the manager.
   The remaining 75% of profits upon which fees are owed shall be carried forward to the end of the next calendar quarter and added to that quarter's profits or losses. If the sum of these two numbers is positive another incentive fee will be owed and 25% will be paid at the end of each quarter.
   If the management relationship is terminated by either party any fees owed shall be payable within 60 days.

3. Before the Board, PSERS contended that the addendum modified the agreement, and, thus, Darien was no longer entitled to the balance of the 1990 incentive fee. The Board rejected this argument, finding that the proposed addendum was of no force or effect, having never been executed or accepted by PSERS. The Commonwealth Court implicitly affirmed this finding, which we find to be supported by the record.

4. Darien further contends that there was an undisputed record of ongoing negotiations between the parties which ended in December, 1991. We need not determine whether or not such negotiations took place as the above-stated facts are sufficient for resolution of this matter.

Darien that its invoice for the balance of the 1990 incentive fee would not be paid. On March 24, 1992, Darien filed a claim with the Board for the unpaid balance of the 1990 incentive fee, interest, and attorney's fees.

The Board never reached the merits of Darien's incentive fee claim, but instead dismissed Darien's claim as untimely, based on the applicable six month statute of limitations. The Commonwealth Court affirmed. This court granted Appellant's petition for allowance of appeal, limited to the above-stated issues.

The first issue on which this court granted allocatur is whether the applicable statute of limitations had expired prior to the filing of Darien's claim.[5] The applicable statute of limitations for contract claims against the Commonwealth is found at 72 P.S. § 4651-6.[6] This statute provides in relevant part:

> the board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued.

Thus, the critical inquiry, and an issue of first impression for this court, is when does a claim "accrue" for purposes of § 4651-6.

As would be expected, PSERS and Darien offer two differing interpretations of when a claim accrues. PSERS contends that the lower tribunals properly found that a claim accrues as soon as a party is able to litigate a claim, that is, when the claimant is able to prepare a detailed statement of the claim. Darien counters that a claim does not accrue until a breach of contract has occurred and the claimant is affirmatively advised

---

5. This court's standard of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact were supported by substantial evidence. *Com., Com'n on Charitable Organizations v. Association of Community Organizations for Reform Now (ACORN)*, 502 Pa. 1, 463 A.2d 406 (1983).

6. Section 6 of the Act of May 20, 1937, P.L. 728, as amended, 72 P.S. § 4651-6.

that its claim for payment will not be honored by the Commonwealth.

The Commonwealth Court has developed a two-prong standard to determine when a claim accrues. A claim accrues when 1) a claimant is first able to litigate his or her claim, e.g., when the amount due under the claim is known and the claimant is capable of preparing a concise and specific written statement detailing the injury, *and* 2) the claimant is affirmatively notified that he or she will not be paid by the Commonwealth. The Commonwealth Court has required that this denial of a claim be unequivocal. *Crawford's Auto Center, Inc. v. Pennsylvania State Police,* 655 A.2d 1064, 1072 (Pa. Commw., (1995), *appeal denied,* 542 Pa. 651, 666 A.2d 1059 (1995); *Del–Car Automotive v. Pennsylvania State Police,* 154 Pa. Commw. 535, 539, 624 A.2d 262, 264 (1993); *Department of Public Welfare v. Ziegler,* 117 Pa. Commw. 79, 82, 542 A.2d 226, 228 (1988); *Department of Public Welfare v. Town Court Nursing Center, Inc.,* 97 Pa. Commw. 380, 386, 509 A.2d 950, 954 (1986), *appeal denied,* 515 Pa. 595, 528 A.2d 603 (1987); *Department of Revenue, Bureau of State Lotteries v. Irwin,* 82 Pa. Commw. 266, 475 A.2d 902 (1984); *Department of Public Welfare v. Ludlow Clinical Laboratories, Inc.* 64 Pa. Commw. 178, 439 A.2d 242 (1982). Thus, both of these prongs must be satisfied before a claim may considered to have accrued.

The Board and the Commonwealth Court did not apply this standard in determining when the statute of limitations had run in this case, but instead, considered only the first prong of the two-prong standard. In concluding that the claim had accrued in March, 1991, the time at which Darien had sent the revised invoice to PSERS for the incentive fee, the Board explained that the case represented an example of how a claim may accrue, even in the absence of an affirmative refusal to pay, citing the Commonwealth Court's decision in *Philanthropic Consultants, Inc. v. Department of General Services and Department of Public Welfare,* 155 Pa. Commw. 460, 625 A.2d 198 (1993), *appeal denied,* 535 Pa. 650, 633 A.2d 154 (1993).

In affirming the Board's order, the Commonwealth Court, in an attempt to "clearly" set forth the law in this area, declared that a claim accrues when "the injured party is first able to litigate its claim—that is, when that party is able to prepare a detailed statement of the claim," also citing *Philanthropic* for support. *Darien,* 668 A.2d at 213. Applying that standard, the Commonwealth Court concluded that Darien's claim accrued in January, 1991, the date Darien originally sent its invoice for the 1990 incentive fee to PSERS. In so doing, the Commonwealth Court explicitly recognized that the time of accrual was before any unequivocal denial of Darien's claim.

Therefore, to resolve when Darien's claim accrued, we must consider the apparent conflict between the general standard and the truncated standard as articulated by the Commonwealth Court in this matter, and to do that, we must review the Commonwealth Court's decision in *Philanthropic.*

In *Philanthropic,* the Department of Public Welfare ("DPW"), acting through the Department of General Services, entered into a lease agreement with Philanthropic Consultants, Inc. ("Philanthropic"), a commercial landlord, for certain rooms of a building for storing inactive DPW files. A subsequent inspection of the building by Philanthropic revealed structural damage to the building which was believed to have been caused by the storage of the files. Philanthropic informed DPW of the situation and after an engineer's report confirmed the cause of the damage, DPW notified Philanthropic that it would be vacating the building. On March 29, 1989, DPW advised Philanthropic that the DPW lease was being cancelled, prior to the end of its term, effective April 30, 1989. Fifteen months later, on July 31, 1990, Philanthropic filed a statement of claim with the Board. The statement contained a claim for breach of an implied covenant in the lease because DPW vacated the premises and failed to return the property to Philanthropic in the same condition in which it was leased to DPW. Restoration damages were demanded in addition to lost rent to the end of the lease's term and during repair.

The Board found that Philanthropic's claim was barred by the statute of limitations because its claim had accrued more than six months before the claim was filed. On appeal before the Commonwealth Court, Philanthropic argued that it attempted to contact appropriate officials to settle the matter, but found its demand for payment transferred between various agency officials without any refusal to pay. Therefore, Philanthropic submitted that its cause of action did not accrue until May, 1990, when it received DPW's letter that no "equitable adjustment" could be made regarding the damages.

The Commonwealth Court determined that the claim had accrued before the Commonwealth's refusal to settle, as the extent of damages was known to Philanthropic by no later than April 30, 1989, the date Philanthropic received notification of the cancellation and, thus, breach of the lease.[7] The *Philanthropic* court noted that while case law suggests that a claim does not accrue until there exists a refusal of payment, the case before it presented a "good example of how in some instances, a claim can accrue notwithstanding the absence of an affirmative refusal to pay." *Philanthropic*, 155 Pa. Commw. at 468, 625 A.2d at 203. Thus, Philanthropic's claim was deemed to be untimely.

The *Philanthropic* court explicitly acknowledged the general standard regarding claim accrual and its requirement of an affirmative notice of a refusal to pay, and admitted that it found no case on "all fours" with the circumstances before it. *Philanthropic*, 155 Pa. Commw. at 468, 625 A.2d at 203. Nevertheless, it chose to disregard the second prong of the two-part standard and created an exception to the general rule regarding claim accrual.

We find this exception to the general standard to be unwarranted. First, the general standard could have been applied in *Philanthropic*. Philanthropic submitted a demand to DPW for the payment of damages when the DPW vacated its

---

7. The Commonwealth Court's opinion is internally inconsistent as to what date Philanthropic was notified of the termination of the lease. At one point in the opinion, the court states that Philanthropic was notified on March 29, 1989, at another point, on April 30, 1989.

building. Philanthropic contended that the demand was not affirmatively denied until May, 1990. Under the general standard, this is when Philanthropic's claim should have accrued. Thus, the two-prong general standard regarding claim accrual could have been, and should have been, applied in that case.

Moreover, the cases relied upon by the *Philanthropic* court for its standard were either consistent with the general rule and contained evidence of some affirmative refusal of payment or inapplicable to a determination of claim accrual.[8]

Finally, the *Philanthropic* court stated that its determination of claim accrual applied only to damages consequent to a breach and did not apply to a situation where there is a delay of payment under a contract for goods or services. *Philanthropic*, 155 Pa. Commw. at 465 n. 3, 625 A.2d at 201 n. 3. However, the court gave no reasons for such a distinction, and we can find no basis for recognizing a distinction between a failure to pay for damages subsequent to a breach and a failure to pay for services rendered. The situation in *Philanthropic* where the claimant's demand for payment for damages was not denied by the Commonwealth until a later date, is virtually identical to the situation before us where an invoice for payment of services rendered was not refused until a later time.

We believe that the Commonwealth Court's decision in *Philanthropic* unnecessarily alters the otherwise bright-line standard that has been established by other panels of the

---

8. The *Philanthropic* court relied upon *Department of Public Welfare v. Federated Security, Inc.* 49 Pa. Commw. 411, 411 A.2d 284 (1980) and *Department of Community Affairs v. Craftech International, Ltd.*, 72 Pa. Commw. 162, 456 A.2d 247 (1983) for its abbreviated standard regarding claim accrual. However, *Federated Security* is consistent with the general standard. In *Federated Security*, DPW, by letter, advised the claimant that its outstanding invoices would not be paid until a problem with claimant provided services was resolved. In response, the claimant withheld services, and shortly thereafter, DPW terminated the contract. *Craftech* is simply inapplicable to this issue as it dealt with equitable estoppel rather than claim accrual. In *Craftech*, the court found that the Department of Community Affairs' conduct concealed facts necessary to institute claimant's action, and, thus, the Department was estopped from asserting the statute of limitations as a defense.

Commonwealth Court regarding claim accrual. Thus, we reject the *Philanthropic* court's adoption of a standard different from the two-prong standard stated above.

As the *Philanthropic* court's creation of an exception to the general standard was in error, the Commonwealth Court's "clarification" of the standard for claim accrual in this case which discards the general standard's second requirement of an affirmative and unequivocal notice of a refusal of payment was also in error, and, therefore, is specifically rejected by this court.[9]

■ Thus, we embrace the well-established standard for claim accrual as most recently stated in *Crawford's*. In the context of this case, and distilled to its essence, a claim for a failure to pay for services rendered accrues when an invoice for the services is presented and payment by the Commonwealth is affirmatively and unequivocally refused.

Common sense dictates no less. To hold that a claim accrues solely when a party is able to prepare a detailed statement of the claim, would negatively impact both contractors and the Commonwealth by encouraging needless and premature litigation. Specifically, any time the Commonwealth does not pay an invoice within six months, a contractor will be forced to file a precautionary law suit or risk being barred at a later time due to the running of the statute of limitations. Of course, there are many reasons why an invoice may not be paid within six short months which have nothing to do with a refusal of payment. Nevertheless, to protect itself in the event of a subsequent refusal to pay, a prudent contractor will initiate a prophylactic action or be subject to the possibly ruinous effects of the statute of limitations.

Moreover, the filing of a myriad of protective law suits will necessarily create an administrative burden for the Commonwealth, as well as for the Board. To find that a claim accrues

9. While the Commonwealth Court and PSERS go to great lengths to distinguish cases such as *Crawford's* and *Del–Car,* it is sufficient to note that the critical aspect of the holdings regarding claim accrual in those cases is the requirement of an affirmative and unequivocal denial of payment by the Commonwealth.

merely when a contractor is able to prepare a detailed statement of a claim would be tantamount to encouraging unnecessary litigation, something that this court is loathe to do. In sum, we believe that the strong public policy of minimizing needless litigation would be ill-served by adopting a rule of claim accrual which fails to include a requirement of affirmative and unequivocal notification of the denial of a claim against the Commonwealth.

■ We now apply our holding to the matter *sub judice*, to determine whether Darien's claim was filed within the statute of limitations. On or about February 11, 1992, PSERS's chief counsel specifically informed Darien that the invoice for the balance of the 1990 incentive fee would not be paid. We find this notification to constitute the first affirmative and unequivocal refusal by PSERS to pay the outstanding balance of the 1990 incentive fee.[10] Darien filed its claim with the Board for the outstanding incentive fee on March 24, 1992. Thus, applying the above-stated standard regarding claim accrual, Darien's claim was filed well within the applicable six month statute of limitations.

Therefore, we hold that the Commonwealth Court erred in failing to apply the appropriate legal standard in the case at bar, and, as a result, incorrectly determined that the statute of limitations had expired prior to the filing of Darien's claim.[11]

10. While the Board did not include in its findings of fact the February 11, notification, as it was not necessary for its disposition of the case, the undisputed testimony of record establishes that on or about February 11, 1992, PSERS gave notice of its refusal to pay the invoice for the balance of the incentive fee.

11. Although the main thrust of PSERS's brief is that the Board made a factual determination that PSERS denied Darien's incentive fee, the Commonwealth Court found, and the record reveals, that PSERS never denied liability for the fee. *Darien*, 668 A.2d at 217. Also, the Commonwealth Court rejected the Board's assertion that Darien did not anticipate that the balance of the 1990 incentive fee would be paid. *Id.* Moreover, while PSERS asserts that the Board made a finding that "by its actions" PSERS alerted Darien that it had no intention of paying the balance of the incentive fee, a finding made without reference to the record, our review of the record discloses that there were no "actions," other than the notification of February 11, 1992, which would satisfy the requirement of an affirmative and unequivocal denial of payment.

The order of the Commonwealth Court is reversed, and the matter is remanded to the Board for proceedings in accordance with this opinion.[12]

NEWMAN, J., did not participate in the consideration or decision of this matter.

Finally, PSERS's alternative arguments that Darien's claim accrued in March or April, 1991 are unavailing for the same reason, that is, during those times, Darien was never affirmatively and unequivocally notified that payment of the balance of the incentive fee would be denied.

12. As we hold that the applicable statute of limitations did not expire prior to the filing of Darien's claim, we need not address the second issue on which allocatur was granted, and which forms the basis of Darien's alternative argument, i.e., whether the Commonwealth was equitably estopped from asserting the statute of limitations pursuant to this court's decision in *Pennsylvania Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979).