**FERGUSON ELECTRIC CO.,
INC., Petitioner**

v.

**DEPARTMENT OF GENERAL
SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 15, 2010.

Decided July 1, 2010.

Publication Ordered Aug. 31, 2010.

Roy S. Cohen, Philadelphia, for petitioner.

David L. Narkiewicz, Harrisburg, for appellee.

BEFORE: COHN JUBELIRER, Judge, McCULLOUGH, Judge, FLAHERTY, Senior Judge.

OPINION BY Judge McCULLOUGH.

Ferguson Electric Co., Inc. (Ferguson) appeals from the September 23, 2009, order of the Board of Claims (Board), which sustained the preliminary objections filed by the Department of General Services (DGS) and dismissed Ferguson's claim for lack of jurisdiction. We affirm.

On January 14, 1994, DGS and Ferguson entered into a contract for the performance of electrical work in the construction of the state correctional in-

stitution at Houtzdale, Pennsylvania. The contract provides, among other things, that disputes arising between a contractor and DGS are to be resolved in accordance with the following three-step procedure: (1) a construction conference; (2) a pre-claim hearing, and (3) a claim filed with the Board pursuant to the Act of May 20, 1937, P.L. 728, *as amended, formerly* 72 P.S. §§ 4651–1— 4651–10 (the Board of Claims Act). (Reproduced Record (R.R.) at 702a–04a.) This "three-tiered" dispute resolution procedure was in effect until 1998, when the Commonwealth Procurement Code (Code) was enacted.[1]

During the course of construction, Ferguson sought payment from DGS for the cost of additional work associated with numerous change orders. On December 5, 1996, in accordance with the contract, the parties participated in a construction conference on the outstanding change orders.[2] (R.R. at 320a–36a.) At the conclusion of the conference, DGS granted Ferguson the opportunity to submit evidence of the actual costs it incurred in performing the work for each of the change orders. DGS advised Ferguson that it could not address the change orders until evidence of actual costs was submitted. (R.R. at 321a–22a.)

By letter dated September 12, 1997, DGS informed Ferguson that DGS had not yet received any additional information and asked Ferguson to confirm that it still intended to submit evidence of actual costs. (R.R. at 338a.) Ferguson did not respond to the correspondence and did not

---

1. 62 Pa.C.S. §§ 101–4509. The Code was enacted by the Act of May 15, 1998, P.L. 358, more than four years after Ferguson and DGS entered into the instant contract. Prior to enactment of the Code, proceedings before the Board were governed by the Board of Claims Act, which was repealed by Sections 21(a)(2) and 22(1)(iv) of the Act of December 3, 2002, P.L. 1147.

2. Ferguson and DGS also disputed a separate group of claim items, which were discussed by the parties at a construction conference on October 17, 1996. The parties resolved these claims on March 22, 1999, when Ferguson executed a release in return for a payment of $230,000. (R.R. at 339a.) The release excluded the claims at issue in this appeal.

submit any additional evidence. Believing that it was Ferguson's responsibility to advance its own claim, DGS did not make a second request for additional evidence or initiate any further communication with Ferguson.

Ferguson took no action for approximately five years. Then, on May 20, 2002, Ferguson submitted a claim to DGS, which included a demand for payment of the change orders. (R.R. at 346a—58a.) By letter dated May 24, 2002, DGS returned the claim to Ferguson's legal counsel, explaining that the claim should have been filed with the Board, and not DGS. However, Ferguson did not file the claim with the Board; instead, via a series of letters in 2002, Ferguson ultimately informed DGS that it wished to resolve this matter in accordance with the procedures established by the Code. Ferguson promised to provide DGS with supporting documentation but never did.[3] (R.R. at 363a, 364a, 371a, and 475a.) On October 1, 2003, Fer-

---

3. In its letters to DGS, Ferguson cited section 1712 of the Code, 62 Pa.C.S. § 1712. However, Section 1712 of the Code was repealed by the Act of December 3, 2002, P.L. 1147 (Act 142 of 2002), and replaced by section 1712.1 of the Code, 62 Pa.C.S. § 1712.1.

Repealed section 1712, provided as follows:
 (a) Applicability.—This section applies to controversies between a Commonwealth agency and a contractor which arise under or by virtue of a contract between them, including controversies based upon breach of contract, mistake, misrepresentation or other cause for contract modification or rescission. Prior to filing a claim under this section with the Board of Claims under the exclusive jurisdiction provided in the act of May 20, 1937 (RL. 728, No. 193), referred to as the Board of Claims Act, the claim must first be filed in writing with the contracting officer within six months after it accrues and not thereafter.
 (b) Authority.—The contracting officer is authorized to settle and resolve a controversy described in subsection (a).
 (c) Decision.—If the controversy is not resolved by mutual agreement, the head of the purchasing agency shall promptly issue a decision in writing. The decision shall:
 (1) State the reasons for the action taken.
 (2) Inform the contractor of its right to administrative and judicial review as provided in this chapter.
 (d) Notice of decision.—A copy of the decision under subsection (c) shall be delivered by registered mail to the contractor.
 (e) Finality of decision.—The decision under subsection (c) shall be final and conclusive unless the contractor files a claim with the Board of Claims within 30 days of receipt of the decision.

 (f) Failure to render timely decision.—If the contracting officer does not issue the written decision required under subsection (c) within 120 days after written request for a final decision or within a longer period as may be agreed upon by the parties, then the contractor may proceed as if an adverse decision had been received.
62 Pa.C.S. § 1712.
Section 1712.1 provides as follows:
 (a) RIGHT TO CLAIM.—A contractor may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth.
 (b) FILING OF CLAIM.—A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.
 (c) CONTENTS OF CLAIM.—A claim shall state all grounds upon which the contractor asserts a controversy exists.
 (d) DETERMINATION.—The contracting officer shall review a claim and issue a final determination in writing regarding the claim within 120 days of the receipt of the claim unless extended by consent of the contracting officer and the contractor. If the contracting officer fails to issue a final determination within the 120 days unless extended by consent of the parties, the claim shall be deemed denied. The determination of the contracting officer shall be the final order of the purchasing agency.
 (e) STATEMENT OF CLAIM.—Within 15 days of the mailing date of a final determination denying a claim or within 135 days of filing a claim if no extension is agreed to

guson filed a Right–to–Know Act[4] request with DGS demanding the production of numerous documents related to the construction project.[5] (R.R. at 373a–75a.)

Approximately five years later, on April 23, 2007, Ferguson sent a letter to DGS, asking it to schedule a construction claims conference. By letter dated August 1, 2007, and sent certified mail, DGS responded as follows:

[T]he Department deems that Ferguson Electric Company breached their duty to submit the information in a timely manner, thereby prejudicing the Department's ability to conduct a meaningful review of any claim. In fact, the Construction Inspection Manager on the project has passed away.

The claim has had several attorneys of record working for various law firms that have, for the past ten years, issued unfulfilled assurances to submit documentation of actual costs 'shortly' and 'in an expeditious fashion,' following the December 5, 1996 Construction Conference. Now, 127 months after the Construction Conference and almost 12 years after Final Inspection on the project, your firm is attempting to continue the claim, which is disingenuous at best. *Ferguson's failure to submit the information constitutes a waiver of the right to pursue the claim.*

(R.R. at 377a.) (Emphasis added.) On August 15, 2007, Ferguson sent a letter to

DGS, objecting to the rejection of its claims and requesting another construction conference. (R.R. at 476a.) DGS did not respond.

On March 12, 2008, Ferguson filed a claim with the Board, which contained counts for breach of contract, unjust enrichment, and quantum meruit. Ferguson averred that its total damages on the construction project were $1,607,415.90. The claim was filed more than seven months, approximately 224 days, after DGS's August 1, 2007, letter.

In response, DGS filed preliminary objections to the claim asserting: (1) lack of jurisdiction; (2) insufficient specificity of the pleading; (3) legal insufficiency of the pleading; and (4) failure to exhaust a statutory remedy.

The Board conducted evidentiary hearings on November 5, 2008, and December 4, 2008. After review, the Board found that DGS's August 1, 2007, letter constituted definitive and affirmative notice to Ferguson that its claim would not be paid. Applying section 1712.1 of the Code, the Board concluded that Ferguson's March 12, 2008, claim was untimely filed, and, therefore, the Board lacked jurisdiction. Accordingly, the Board sustained the preliminary objection regarding lack of jurisdiction and dismissed Ferguson's claim.[6]

On appeal to this Court,[7] Ferguson first contends that the Board erred as

---

by the parties, whichever occurs first, the contractor may file a statement of claim with the board.

62 Pa.C.S. § 1712.1.

4. Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.9. The statute was replaced by the Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

5. DGS produced documents in response to the Right to Know request, which Ferguson utilized during the proceedings before the Board. (R.R. at 266a, 372a.)

6. The Board issued a decision on August 31, 2009, sustaining preliminary objections and dismissing Ferguson's claim. Ferguson thereafter moved for reconsideration and the Board, in response, issued a revised decision on September 23, 2009. The revised decision is the subject of this appeal.

7. This Court shall affirm an order of the Board unless it finds that the adjudication violates the constitutional rights of the appellant, is not in accordance with law, or that necessary findings of fact are unsupported by

a matter of law by determining that its claim accrued on August 1, 2007. Under the 1998 and 2002 versions of the Code, as well as the repealed Board of Claims Act, the limitation period on a claim commences when it "accrues." A claim accrues when (1) a claimant is first able to litigate his or her claim, e.g., when the amount due under the claim is known and the claimant is capable of preparing a concise and specific written statement detailing the injury, and (2) the claimant is affirmatively notified that he or she will not be paid by the Commonwealth. *Darien Capital Management, Inc. v. Public School Retirement System*, 549 Pa. 1, 700 A.2d 395 (1997). The denial of a claim must be unequivocal, *id.*, and both prongs of the *Darien* test must be satisfied before a claim may be considered to have accrued. *Knorr.*

■ Ferguson argues that the August 1, 2007, letter from DGS did not affirmatively and unequivocally deny any of its claims because the letter does not expressly state that the claims would not be paid. In its August 1, 2007, letter, DGS unequivocally stated that Ferguson waived its right to pursue its claim. While DGS did not use the words "will not be paid" or "denied," the clear import of the letter is that Ferguson would not be paid. Ferguson recognized this in the August 15, 2007, letter, stating that it was inappropriate for DGS to "blindly reject" the claims. (R.R. at 476a.) Further, the August 1, 2007, letter was DGS's final response to Ferguson's intermittent attempts to receive payment from DGS for the change orders.

Ferguson argues that this case is controlled by *Knorr*, where the Court determined that a letter issued by an agency did not contain a final and unequivocal denial of the appellant's claim. However, in contrast to the facts here, the letter at issue in *Knorr* was not a clear and unequivocal statement that the appellant's claim would not be paid, but rather was merely a summary of the problems experienced on the construction project and a request for additional information. Also, while the Court observed that the agency's letter lacked language stating that it was a final decision and informing the contractor that it had a right to appeal, *Knorr* did not hold that such language is mandatory.

Moreover, the record reflects that Ferguson was capable of preparing a concise and specific written statement detailing the injury as early as May 20, 2002, when Ferguson submitted a claim to DGS that set forth the details of its alleged losses and demanded specific amounts of money. (R.R. at 347a–58a.) Also, by letter dated April 23, 2007, Ferguson informed DGS that it had hired an expert and prepared documentation to support its entitlement to additional funds. (R.R. at 376a.) Therefore, we conclude that Board correctly determined that Ferguson's claim accrued on August 1, 2007.

■ Next, Ferguson contends that the Board erred by applying section 1712.1 of the Code to this dispute, instead of the three-tier procedure set forth in the parties' contract, to determine that its claim was untimely. However, the record reflects that the parties did initially follow the three-tier procedure, but that process was suspended following the 1996 construction conference in order to allow Ferguson to submit evidence of the actual costs it incurred in performing the work for change orders. The suspension be-

substantial evidence. *Wayne Knorr, Inc. v. Department of Transportation*, 973 A.2d 1061 (Pa.Cmwlth.2009). Our review of an order granting of preliminary objections based on an issue of law is plenary. *Ballroom, LLC v. Commonwealth*, 984 A.2d 582 (Pa.Cmwlth. 2009).

came perpetual due to Ferguson's failure to submit any additional evidence. During this protracted period, the General Assembly enacted the Code and changed the procedure for enforcing a contract claim. Importantly, the record reveals that Ferguson informed DGS that Ferguson wished to proceed in accordance with the new procedure established by the Code. Ferguson's counsel confirmed this by letter dated August 7, 2002:

> As you know, this firm represents Ferguson Electric. Please allow me to confirm that Ferguson Electric agrees to proceed with its claim under the new claim procedure outlined in the Commonwealth Procurement Code, 62 PA. C.S. section 1712. . . .

(R.R. at 475a.)

Also, the General Assembly included a provision in the 2002 amendments to the Code regarding the applicability of the statute to unresolved claims. Section 21.2 of Act 142 of 2002 [8] provides as follows:

> Any claim filed and not finally resolved under the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act, *prior to the effective date of this act,* shall be disposed of in accordance with the Board of Claims Act.

(Emphasis added.) Because Ferguson's claim did not accrue until August 1, 2007, long after the effective date of Act 142, it follows that the Code, as amended in 2002,

applies to the instant dispute even though the contract was executed in 1994.[9]

Moreover, we observe that Ferguson's claim was untimely filed regardless of whether we apply the 1998 or 2002 version of the Code. Under those statutes, the maximum possible time period from the date the claim is submitted to the contracting officer to the date the claim is filed with the Board is 150 days and 135 days respectively. The record demonstrates that Ferguson's claim was filed approximately 224 days after its claim accrued on August 1, 2007, and approximately 210 days from August 15, 2007, when Ferguson informed DGS that it objected to the rejection of its claims and requested another construction conference. Thus, the claim was filed far beyond the time limits permitted by either the 1998 or 2002 versions of the Code.

█ Ferguson next argues that, under the Contract Clauses of the Constitutions of the United States and the Commonwealth of Pennsylvania, the enactment of the Code cannot alter the terms of the parties' pre-existing contract. However, the record indicates that Ferguson agreed to amend the terms of the contract by seeking resolution of this dispute under the Code. We also note that Ferguson had ample opportunity following the 1996 construction conference to submit additional data and pursue its claims under the provisions of the contract, but did not do so.

---

8. Act of December 3, 2002, P.L. 1147. While it is not codified in Title 62 of the Consolidated Statutes, section 21.2 of Act 142 is quoted in the Historical and Statutory Notes appended to section 1721 of the Code in 62 Pa.C.S. § 1721.

9. Ferguson argues that the "claim" for purposes of section 21.2 of Act 142 is the one that it asserted in 1996, which was never finally resolved. To the contrary, under the contract's three-tier system, it appears that the

1996 construction conference was a pre-claim negotiation procedure (Board's Findings of Fact Nos. 8, 9, and 11), and that the matter never progressed beyond the first tier. Further, the Board found that the formal claim for purposes of the 2002 version of the Code did not occur until August 15, 2007, when Ferguson submitted a letter challenging DGS's determination that it had waived the right to pursue its claim. (Board's Finding of Fact No. 57.)

Ferguson also contends that the Board erred by determining on preliminary objections that the statute of limitations had expired, because the statute of limitations is an affirmative defense and must be raised in new matter. While this observation is true, a party is required to file preliminary objections to preliminary objections challenging this procedural irregularity, and the failure to do so waives the right to object to the form of the pleading. *Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 415 A.2d 53 (1980); *Stilp v. Commonwealth,* 910 A.2d 775 (Pa. Cmwlth.2006). Ferguson did not file preliminary objections to DGS's preliminary objections on the ground that DGS improperly raised this affirmative defense. Hence, Ferguson waived the right to object that the statute of limitations was raised in an improper manner. *Duquesne Slag Products; Stilp.* Moreover, the record reveals that DGS raised preliminary objections asserting lack of jurisdiction, Pa. R.C.P. No. 1028(a)(1), and failure to exhaust administrative remedies, Pa. R.C.P. No. 1028(a)(7). These objections involved questions of fact and, consistent with Pa. R.C.P. No. 1028(b)(2), the Board conducted evidentiary hearings and created a substantial record. Based on that record, the Board properly determined that it lacked jurisdiction and that Ferguson's claims should be dismissed. We find no error in this procedure.

Ferguson further contends that DGS is equitably estopped from asserting the six-month limitation period under sections 1712 and 1712.1 of the Code, relying upon the rationale in *Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779 (1979), where the Supreme Court articulated the following:

> The facts pleaded in UEC's complaint are clearly sufficient to demonstrate the propriety of applying estoppel to prevent the Commonwealth from asserting the bar of the six-month limitation of 72 P.S. § 4651–6. *High Commonwealth officials, including the Secretary of DPW and its General Counsel, repeatedly gave UEC their assurances that the Commonwealth would compensate them (UEC) under the contract. In fact, they made partial* payment and merely questioned the remainder owed. At no point has the Commonwealth ever denied liability for the debt owed UEC. Quite the contrary, the conduct of Commonwealth officials during the period from October 14, 1971 through February 15, 1973 was entirely consistent with *an admission of liability for the debt.* Seemingly amicable negotiations continued during that entire period, with full cooperation by UEC. These negotiations resulted in the HEW audit, requested by DPW (and consented to by UEC) which audit determined the reasonable value of UEC's services. Since the audit was, pursuant to the oral compromise and settlement agreement, necessary to establish the balance owed under that agreement, UEC reasonably delayed any possible legal action pending completion of the audit. Even after the audit was completed, the Commonwealth *continued* to assure UEC of its intention to pay its obligation, *lulling them into a false sense of security regarding the necessity for initiating legal action.*

*Id.,* 483 Pa. at 513–14, 397 A.2d at 784 (emphasis added).

The Board concluded that the situation here was not at all analogous to *UEC.* Rather, the Board found that DGS did not engage in any fraud or concealment, deception, or misrepresentation that lulled Ferguson into a false sense of security regarding the necessity for initiating legal action; nor did DGS assure Ferguson that

it would be paid. The Board explained as follows:

Contrary to Ferguson's assertions, the Board does not find that the Department engaged in any 'fraud or concealment,' even under the relaxed standard of an 'unintentional deception.' As unappealing as the tactic may be for an agency of state government to hold silent for all these years in the hope that a contractor will forget about a pending claim (regardless of the merits), DGS did make an early attempt to move the matter along when Ms. Hallett sought Ferguson's information by letter dated September 12, 1997. It was, after all, Ferguson which then failed to respond, allowed the claim to languish for over 10 years and, throughout that time, failed to produce the additional claim information despite its own repeated promises to do so. More to the point, we do not find the facts here analogous to *UEC* to any significant degree. Unlike *UEC*, the parties here were not in continuous contact or negotiation. Instead, long periods elapsed in which there was no activity in regard to the portion of Ferguson's case here at issue, including the period from September 1997 to May 2002 and from October 2003 until April 2007. Additionally, we find no persuasive evidence of any misrepresentation on the part of DGS giving Ferguson cause to delay or relax its vigilance as was the case in *UEC* where '[h]igh Commonwealth officials ... repeatedly gave UEC their assurances that the Commonwealth would compensate them [UEC] under the Contract. In any event, Mr. Resta's letter of August 1, 2007 made it abundantly clear that DGS would not consider Ferguson's claim any further, and Ferguson has offered no evidence whatsoever of any basis to assert an estoppel claim as it relates to

Ferguson's delay in filing a claim after the Resta letter of August 1, 2007.

Board's Decision at 34–35 (citations omitted) (footnote omitted). The Board correctly analyzed *UEC*, and the Board's findings and rationale are amply supported by the record. Therefore, we conclude that this issue is without merit.

 Finally, Ferguson contends that the Board erred by dismissing its claim, when it is undisputed that DGS is holding a contract balance in the amount of $54,221.80 and that Ferguson is entitled to compensation for the change orders. However, even assuming for the sake of argument that Ferguson has a meritorious claim against DGS, the Board properly found that the claim was untimely and that the Board lacked jurisdiction. When a claim is untimely and the Board lacks jurisdiction, the Board cannot adjudicate the merits of the underlying claim. *Department of Public Welfare v. Shapiro*, 91 Pa.Cmwlth. 64, 496 A.2d 887 (1985). Therefore, this contention must fail.

Accordingly, the Board's order is affirmed.

### ORDER

AND NOW, this 1st day of July, 2010, the September 23, 2009, order of the Board of Claims is hereby AFFIRMED.