IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lobar Associates, Inc.,              :
          Petitioner       :
                           :
          v.              :   No. 1038 C.D. 2018
                           :   Argued: March 12, 2019
Pennsylvania Turnpike Commission,  :
          Respondent     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: August 1, 2019

Lobar Associates, Inc. (Contractor) petitions for review of an order of the Board of Claims (Board) that sustained the preliminary objections of the Pennsylvania Turnpike Commission (Commission) and dismissed Contractor's claim for lack of jurisdiction. The Board held that Contractor's claim was barred by the six-month statute of limitations set forth in Section 1712.1(b) of the Commonwealth Procurement Code, 62 Pa. C.S. §1712.1(b).[1] Contractor argues that the Board erred in its determination of when Contractor's claim accrued. Discerning no such error by the Board, we affirm.

## Background

On June 18, 2014, Contractor agreed to construct a 2,431-square-foot material testing laboratory at mile marker 113.82 of the Pennsylvania Turnpike (the

---

[1] Section 1712.1(b) of the Procurement Code states:

> (b) Filing of claim.--A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.

62 Pa. C.S. §1712.1(b).

Somerset Project) for the Commission. Contractor completed the work in June 2016. On July 27, 2016, Contractor submitted a "supplemental work order" to the Commission, requesting additional compensation of $150,925.19 for changes to the project made by the Commission during construction. Reproduced Record at 676a (R.R. __). On September 21, 2016, the Commission responded that it would pay $35,233.05 for the supplemental work. Contractor responded with a request for further review, which was denied by the Commission on October 17, 2016.

On March 27, 2017, Contractor submitted an administrative claim to the Commission's contracting officer, seeking $418,767.42 for the supplemental work and delay damages attributable to the Commission's project design changes. The Commission conducted an administrative hearing. It denied Contractor's claim as untimely because it was not submitted within six months of the Commission's September 21, 2016, determination that it would pay $35,233.05 for the supplemental work.

Thereafter, on September 14, 2017, Contractor filed a three-count claim against the Commission with the Board asserting breach of contract, unjust enrichment, and violation of the Contractor and Subcontractor Payment Act, 73 P.S. §§501-516.[2] Contractor sought a judgment in excess of $418,767.42, plus interest, costs of suit and attorney fees.

Contractor's claim stated that the Somerset Project began as a publicly bid project. However, the Commission then made an "unwieldy and confusing

_____

[2] Act of February 17, 1994, P.L. 73, *as amended*, 73 P.S. §§501-516. The Contractor and Subcontractor Payment Act sets guidelines for prompt payment. Section 9 of the Contractor and Subcontractor Payment Act, 73 P.S. §509. Interest may be assessed on payments unreasonably held. Section 9(d) of the Contractor and Subcontractor Payment Act, 73 P.S. §509(d). A contractor that withholds payment in bad faith can be subjected to a one percent penalty and attorney fees. Section 12 of the Contractor and Subcontractor Payment Act, 73 P.S. §512.

2

attempt to convert [the] publicly bid project into a JOC [job-order contract] project." Claim, ¶2 at 1; R.R. 8a.[3] The claim alleged that this conversion resulted in "an incomplete design to start the [p]roject and thus one that changed and morphed as the [p]roject proceeded." Claim, ¶3 at 2; R.R. 9a. The design changes required Contractor to perform work beyond the scope of the contract. Claim, ¶5 at 2; R.R. 9a. In addition, Contractor sought delay damages for expenses it incurred due to delays caused by the design changes. Claim, ¶6 at 2; R.R. 9a. Contractor's claim asserted damages of $150,925.19 for the supplemental work and delay damages of $267,842.23. Claim, ¶7 at 2: R.R. 9a.

The Commission filed preliminary objections, asserting that the Board lacked jurisdiction because Contractor's claim was barred by the six-month statute of limitations in Section 1712.1(b) of the Procurement Code. The Commission also asserted that Contractor failed to exhaust its administrative remedy and failed to state a claim for unjust enrichment. The Board held an evidentiary hearing on the question of its jurisdiction.

Contractor presented the testimony of Carl Barker, its project manager for the Somerset Project.[4] He has worked with hundreds of job order contracts, but the Somerset Project was his first with the Commission. The contract established a fixed price for the completion of the Somerset Project, but it also authorized

---

[3] A "job order" is defined by Section 101.03 of the Contract as the "contractor's authorization issued by the Commission, in conjunction with a Purchase Order, to perform all work required to complete the Detailed Scope of Work for the amounts in the Price Proposal within the agreed upon schedule." R.R. 54a.

[4] Barker was employed by Contractor from April 2015 through January 2018.

3

supplemental job orders that would add work credits to, or deletions from, the contract's fixed price.[5]

Barker's contact at the Commission was Robert Kleimenhagen, the project manager. At the outset, Kleimenhagen instructed Barker to keep an Excel spreadsheet to document extra work Contractor performed on the Somerset Project. Rather than address each project change as it arose, Kleimenhagen explained that the Commission would review the spreadsheet at the end of construction. Barker thought this was unusual for such a large project, but he complied with Kleimenhagen's directive. At the conclusion of the project, Contractor submitted a supplemental job order and spreadsheet seeking $150,925.19 for additional work.

Barker testified that he sent the supplemental job order request via email on July 27, 2016, to Gary Madey, the Commission's construction manager. Barker explained that the spreadsheet had to be uploaded using the Commission's collaborative software, known as "Kahua," and Madey was the person who handled this software. Notes of Testimony, 3/12/2018, at 53 (N.T. __); R.R. 388a. Barker copied Kleimenhagen on the email to Madey. On August 26, 2016, Kleimenhagen responded that he hoped to complete the review by September and requested additional information from Barker. Barker did not respond to Kleimenhagen's email.

On September 21, 2016, Kleimenhagen sent Barker an email with an attached spreadsheet. The email explained that the Commission's entire construction management team had reviewed Barker's spreadsheet and compared it to the project design drawings, specifications, special provisions and on-site

---

[5] The Commission describes the job order contract between the Commission and Contractor as an "umbrella contract" from which individual "job orders" or "projects" could be awarded. Commission Brief at 9.

4

construction inspections. The email concluded that Contractor was owed $35,233.05, and not $150,925.19. Contractor was advised to submit a supplemental job order for the work items for which the Commission was willing to pay.

On October 6, 2016, Barker sent Kleimenhagen an email requesting further review because Contractor did not accept the amount of $35,233.05. Barker did not specifically request, but expected, a meeting. On October 17, 2016, Kleimenhagen responded with an email that reiterated the line-by-line account of what the Commission agreed to pay pursuant to the September 21, 2016, email.

Barker testified that he believed the Commission's October 17, 2016, email was the final determination. He did not believe the September 21, 2016, email was a final determination because the job order contract required a "collaborative process" whereby the parties would "review and discuss" all supplemental job orders. With the October 17, 2016, email, Barker realized the Commission would not meet and discuss the supplemental job order at issue.

On cross-examination, Barker was asked about Contractor's delay damages, which were not included in its July 27, 2016, supplemental job order. Barker explained that he was still working on the delay claims at that time. Barker acknowledged that the job order contract required prompt notification of any claim for delay damages.

Barker was also questioned about a January 5, 2017, letter from the Commission's counsel to Contractor's counsel. In that letter the Commission expressed its disagreement with Contractor's assumption that the deadline for filing an administrative claim with the Commission was six months after Kleimenhagen's October 17, 2016, email, *i.e.*, April 17, 2017. The letter stated that Kleimenhagen's

5

earlier email of September 21, 2016, was the final determination, and Contractor had six months from that date to file a claim, *i.e.*, March 21, 2017.

Janice Fleming-White, a member of Contractor's legal department, testified. She reviewed the September 21, 2016, email and concluded that it did not constitute a final decision. Upon review of the October 17, 2016, email she prepared a letter of intent to file a claim, which was sent to Kleimenhagen the next day.

The Commission presented the testimony of Kleimenhagen, who stated that he was the project manager for the Somerset Project, the contract representative and the contracting officer. Michael Baker International served as the construction manager, and it assigned Madey to inspect the Somerset Project.

Kleimenhagen confirmed that he instructed Barker to keep a record of the work that was deleted or added to the project and to submit all work changes in a supplemental job order at the conclusion of the contract. Kleimenhagen's directive did not relate to the notice of delay damages; the contract requires that a claim for delay damages be asserted within ten calendar days of the act that caused the delay. The contract also required Contractor to file a notice of intent to submit a delay damages claim to the contracting officer in writing within ten days of the act or omission.

Kleimenhagen testified that Contractor submitted the supplemental job order request on July 27, 2016. On August 24, 2016, Kleimenhagen emailed Barker requesting additional documentation to finish the review, but Barker did not respond. Kleimenhagen then sent the September 21, 2016, email partially denying the claim. Attached to the email was a spreadsheet with a line-by-line analysis of costs the Commission accepted or rejected, followed by a notation "pay" or "no pay." N.T. 142; R.R. 477a.

6

Kleimenhagen noted that Barker's email of October 6, 2016, did not point out any errors in the Commission's review. It simply expressed disagreement and requested a further review. On October 17, 2016, Kleimenhagen responded to Barker, stating that the review had been completed, as reported in the Commission's September 21, 2016, email. Contractor then issued a notice of claim on October 18, 2016.

On cross-examination, Kleimenhagen was questioned about his status as the Commission's contract representative. Kleimenhagen responded that he was assigned this job by his supervisor, but he conceded there was no written confirmation of his appointment. Kleimenhagen was then asked about an email Madey sent to Barker in 2015 in which Madey identified himself as the contract representative. Kleimenhagen explained that he drafted the email for Madey to send, but it looked, mistakenly, as if Madey was the author.

Madey testified regarding his review of the supplemental job order.[6] When Contractor submitted the supplemental job order and spreadsheet, Madey prepared his own spreadsheet. He looked at each of the 237 line items submitted and compared each with the terms of the contract and the construction plans. If the item listed represented additional work requested by the Commission, he wrote "pay" on the line. N.T. 212; R.R. 547a. If the item listed was required under the original contract, he wrote "no pay." *Id.* There were items that Contractor had included in its proposal but did not perform, which he also listed as "no pay." Madey stated that the spreadsheet was produced by collaboration between Michael Baker, Inc., and the

_____

[6] Madey was not questioned about the 2015 email wherein he referred to himself as the contract representative.

7

Commission. The Commission's construction management team did one review, and it was completed by September 21, 2016.

The Board sustained the Commission's preliminary objection to its jurisdiction. The Board found that Contractor's claim accrued on September 21, 2016. Accordingly, when Contractor filed its administrative claim to the Commission on March 27, 2017, the six-month statute of limitations in Section 1712.1(b) of the Procurement Code had run.

The Board rejected Contractor's contention that Kleimenhagen was not the contract representative with authority to deny payment on Contractor's supplemental job order. The contract defined the Commission's "representative" as "the authorized representative acting on behalf of the Director of Facilities and Energy Management Operations or the Chief Engineer." R.R. 588a. The contract made the "representative" the one to "decide differences concerning the performance of the work covered by the contract." R.R. 598a. Although Madey identified himself in an email as the Commission's "designated representative" on the Somerset Project, the Board accepted Kleimenhagen's testimony that he was the actual contract "representative." This finding was supported by other evidence.

For example, Contractor sent the supplemental work order to Madey, but it was Kleimenhagen who responded. It was Kleimenhagen who advised Barker that if Contractor submitted a revised proposal, "I will process the supplemental Job Order ASAP." R.R. 681a. These communications showed that Kleimenhagen was the contract "representative," and at no point did Contractor question Kleimenhagen's authority to so act. Indeed, Contractor sought further review from Kleimenhagen, and Contractor accepted his October 17, 2016, email as a final determination.

8

The Board rejected Contractor's argument that the September 21, 2016, email was not a final determination. The email stated that the Commission had "completed the review" of Contractor's supplemental job order request and that the "entire construction management team" had compared the submission with the project specifications. The email specifically identified what would not be paid, with line-by-line notations, and this constituted a denial. The Board also rejected Contractor's assertion that Kleimenhagen's October 17, 2016, email implied that additional review had been undertaken by the Commission subsequent to September 21, 2016. Contractor now petitions for this Court's review.

**Appeal**

On appeal,[7] Contractor raises several issues, which we have reordered and combined into three for purposes of our review. First, Contractor argues that the Board erred in finding that Kleimenhagen was the contract "representative" with authority to make a determination on Contractor's supplemental job order. Second, Contractor contends that even if Kleimenhagen could issue a determination, the Board erred in holding that Contractor's claim accrued on September 21, 2016, because Contractor reasonably interpreted the email Kleimenhagen sent on that date as merely starting the contractually mandated collaborative review process, to which the Commission did not adhere. Relatedly, Contractor contends that the Board erred in failing to consider actions by the Commission after September 21, 2016, indicating that it did not consider Kleimenhagen's email to be a final determination.

---

[7] In reviewing a Board decision this Court determines whether the Board committed an error of law, whether the necessary findings were supported by substantial evidence, or whether constitutional rights were violated. *Wayne Knorr, Inc. v. Department of Transportation*, 973 A.2d 1061 (Pa. Cmwlth. 2009). Our standard of review of an order sustaining preliminary objections based on an issue of law is *de novo,* and our scope of review is plenary. *Buchart Horn, Inc. v. Department of Transportation*, 1 A.3d 960 (Pa. Cmwlth. 2010).

9

Third, Contractor asserts that the Board erred in finding that any confusion over the procedure the Commission followed was cleared up by the January 5, 2017, letter from the Commission's general counsel; Contractor argues that letter was misleading.

## Discussion
## I. Kleimenhagen's Authority

In its first issue, Contractor argues the Board erred in finding that Kleimenhagen was the Commission's named contract "representative" with authority to make a determination on Contractor's supplemental job order.[8] Contractor cites Kleimenhagen's testimony that there was nothing in writing appointing him as contract representative. The only person who asserted, in writing, that he was the Commission's contract representative was Madey, the Commission's construction manager. Because Kleimenhagen lacked the requisite authority, Contractor asserts that Kleimenhagen's September 21, 2016, email to Barker was not a final determination that caused Contractor's claim to accrue.

---

[8] Section 101.03 of the parties' contract defines the "representative" as "[t]he authorized representative acting on behalf of the Director of Facilities and Energy Management Operations or the Chief Engineer." R.R. 588a. Pursuant to Section 105.01 of the contract, the named contract representative is authorized to:

[1] determine the appropriateness of each task in the Price Proposal[;]

[2] determine whether an item of work is a Prepriced Task or a Non-Prepriced Task;

[3] determine the quantity of the kinds of work and the quality of material for which payment will be made under the contract;

[4] determine the answer to questions in relation to the project and its construction; and

[5] decide differences concerning the performance of the work covered by the contract.

R.R. 598a.

10

The Commission responds that Kleimenhagen testified that he was appointed the contract representative for the Somerset Project by his director. Further, the Commission routinely assigned the project manager to serve as the contract representative and the contracting officer. Kleimenhagen testified that Contractor was well aware of this practice because it has completed dozens of construction projects with the Commission over many years. Kleimenhagen drafted the 2015 email that identified the author as the contract representative, and Madey sent it to Contractor. Although it was not clear that the email referred to Kleimenhagen as the contract representative, Contractor did not treat Madey as the actual contract representative.

We agree with the Board's conclusion that Kleimenhagen had authority to issue a determination on Contractor's supplemental job order. Barker emailed the supplemental job order to Madey, with a copy to Kleimenhagen, and the responses on August 26 and September 21, 2016, came from Kleimenhagen. Barker did not testify that he considered the September 21, 2016, email to be a preliminary communication because Kleimenhagen had authored it. In fact, Barker testified he had no idea who was the contract representative. Barker further testified that he considered the October 17, 2016, email, which was also authored by Kleimenhagen, to be the Commission's final decision. This inconsistency cannot be reconciled with Contractor's premise that Kleimenhagen was not authorized to act as the Commission's contract representative.

Further, the Board credited Kleimenhagen's testimony that he was the contract representative. This testimony is supported by Kleimenhagen's September 21, 2016, email to Barker, which states:

> The [Commission] has completed the review of your supplemental job order request submitted on July 27, 2016.

11

Please find attached an EXCEL spreadsheet which provides an explanation for each category/line in the proposal, and our position on whether the line item will be paid or not by the [Commission]. *The entire construction management team [the Commission, the construction project manager and inspector, and the project architect] thoroughly reviewed your submission* by comparing it to the project design drawings, specifications, special provisions, and on-site inspections during construction. Our determination is the acceptable additional work costs submitted by [Contractor] is $35,233.05 not $150,925.19.

R.R. 681a (emphasis added). This email demonstrated Kleimenhagen's authority to speak for the Commission.

There is no support for Contractor's claim that Kleimenhagen lacked authority. Further, Contractor's legal department deemed Kleimenhagen's October 17, 2016, email to speak for the Commission, thereby triggering Contractor's right to file a notice of claim. In sum, substantial evidence supports the Board's factual finding that Kleimenhagen was the contract representative on the project.

## II. Accrual Date of Contractor's Claim

Contractor contends that the Board erred in finding that Contractor's claim accrued on September 21, 2016, because Kleimenhagen's email of that date was not a final determination on Contractor's supplemental job order. Contractor observes that the email did not use terms such as "will not be paid" or "denied." Nor did Kleimenhagen assert in his subsequent email of October 17, 2016, that the claim had already been denied. Contractor maintains that it reasonably interpreted the September 21, 2016, email as starting the contractually mandated review process, which required that a supplemental job order follow the same process for developing a new job order. This collaborative process required the parties to "meet and discuss" the matter before a final determination was made, and the Commission did not satisfy this requirement. Barker requested further review on October 6, 2016,

12

because he assumed there would be a meeting prior to a final determination. Contractor asserts that the Commission's actions after September 21, 2016, also show that it did not consider Kleimenhagen's communication of that date to be a final determination.

Our Supreme Couort has addressed the accrual of a claim under the Procurement Code. In *Darien Capital Management*, *Inc. v. Public School Employes' Retirement System*, 700 A.2d 395, 397 (Pa. 1997), the Court stated as follows:

> A claim accrues when 1) a claimant is first able to litigate his or her claim, e.g., when the amount due under the claim is known and the claimant is capable of preparing a concise and specific written statement detailing the injury, *and* 2) the claimant is affirmatively notified that he or she will not be paid by the Commonwealth.

Both prongs must be satisfied for a claim to accrue and only then will the statute of limitations commence. *Ferguson Electric Company, Inc. v. Department of General Services*, 3 A.3d 681, 686 (Pa. Cmwlth. 2010). A refusal to pay need not contain the words "will not be paid" or "denied." *Id.* Nor is it mandatory that the refusal state that it is a "final decision" or advise the recipient of the "right to appeal." *Id.* A claim accrues when the refusal communicates that payment will not be made. *Id.*

The September 21, 2016, email from Kleimenhagen to Barker states, in relevant part, as follows:

> The [Commission] has completed the review of your supplemental job order request submitted on July 27, 2016. Please find attached an EXCEL spreadsheet which provides an explanation for each category/line in the proposal, and our position on whether the line item will be paid or not by the [Commission]. The entire construction management team [the Commission, the construction project manager and inspector,

13

and the project architect] thoroughly reviewed your submission by comparing it to the project design drawings, specifications, special provisions, and on-site inspections during construction. Our determination is the acceptable additional work costs submitted by [Contractor] is $35,233.05 not $150,925.19.

I have created JOC Project 02-2015-G-009.01 in the E-Gordian system, and respectfully request that you submit a revised proposal for the "pay" items listed in the attached EXCEL spreadsheet at your earliest convenience. Once I receive the proposal in E-Gordian, I will process the supplemental Job Order ASAP.

R.R. 681a. Contractor asserts that this language did not trigger the accrual of its claim against the Commission. We disagree.

Kleimenhagen's email specifies the total amount of the supplemental work order that the Commission would pay. A spreadsheet was attached, listing the 237 line items Contractor sought payment for and the cost of each item. A notation is made after every single item stating "pay" or "no pay." A reason is listed for each item for which payment was denied. The email states the review was "completed," and "our determination is the acceptable additional work costs submitted by [Contractor] is $35,233.05 not $150,925.19." R.R. 681. In sum, the September 21, 2016, email meets both prongs of the standard set forth in *Darien Capital Management*, *i.e.*, Contractor was able to state the amount due under its claim and had been notified that it would not be paid that amount by the Commission.

Notwithstanding the unequivocal denial communicated by the September 21, 2016, email, Contractor maintains that it reasonably interpreted it to initiate the contractually mandated review process, which requires a supplemental job order to follow the same process for developing a new job order. This collaborative process required the parties to "meet and discuss" the matter before a

14

final determination was made. The Commission responds that the plain language of the contract does not support Contractor's argument. The collaborative process set forth in the contract relates to the development of a job order. It makes no sense to follow this procedure for work already completed. The Board agreed, as do we.

Section 109.03(a) of the contract states that a "supplemental job order" will be developed in accordance with the "procedures for developing a job order." R.R. 632a. More specifically, Section 109.03(a) states:

> Work specified in Sections 104.02 [regarding alterations to detailed scope of work] and 104.03 [deleted from contract] will be paid, if authorized in writing by the Representative, as a *Supplemental Job Order developed in accordance with the procedures for developing a Job Order set forth in the Special Provisions*. Compensation will be limited to the work authorized in writing and actually performed. Work performed before written authorization will be at the Contractor's risk.
>
> A Supplemental Job Order identifying the work to be done and the price to be paid therefore will be processed before or during the performance of the work. To avoid interrupting the project, written authorization to perform the work [is permissible from specified project personnel].

*Id*. (emphasis added). The "Procedure for Developing a Job Order" is set forth in Special Provision 9.00 of the Contract. It provides:

> As the need exists, the Commission will notify the contractor of a project. The Commission and the contractor will review the project and discuss, at a minimum:
>
> a. the general scope of the work
>
> b. alternatives for performing the work and value engineering;
>
> c. access to the site and protocol for admission;

15

d.  hours of operation;

e.  staging area;

f.  requirements for professional services, sketches, drawings, and specifications;

g.  construction schedule;

h.  the presence of hazardous materials;

i.  date on which the Price Proposal is due.

R.R. 571a-72a. Once this initial process is completed, the contractor prepares a price proposal, which the Commission reviews to determine its reasonableness. The Commission is authorized to accept or reject the price proposal for any reason.

The contractual procedure for developing a job order requires a discussion to determine what work will be done, how it will be done, when it will be done and what it will cost. This presupposes that the work has not yet been completed. Similarly, Section 109.03(a) states that the supplemental job order will be "processed before or during the performance of the work." R.R. 632a. These requirements cannot be applied to the type of supplemental job order at issue here, *i.e.*, one for work that has already been completed.

The Board rejected Contractor's claim that a supplemental job order was to be negotiated in accordance with the procedures for developing a job order. The Board explained as follows:

> Based on the Board's reading of the [contract], as well as our years of experience in resolving contract claims, *a supplemental job order, like a change order* (which was to accompany same here per the General Provisions) *is the process used when both contractor and owner/agency agree the work is beyond the scope of the original design/specifications* <u>and</u> determine that they can negotiate a price for the new work and add it to the contract

16

<u>before</u> the new work is done without delaying the project. It is <u>not</u> the process prescribed or utilized when the parties do not agree as to whether the disputed work is or is not within the original scope of the contract <u>or</u> have not determined to resolve the issue before the alleged extra work occurs. Instead the *process prescribed here by [] Kleimenhagen* (i.e. continue with the work, keep track of what the contractor believes to be extra work, and seek resolution at the end of the project) *is the more typical method for resolution of such disputed tasks as we have here in this case*.

Based on the plain language of the [c]ontract, particularly that of Section 109.03 of the General Provisions, to which [Contractor] wishes strictly to hold the [Commission], *we conclude that, strictly speaking, this provision is not applicable to a claim for extra work made after the work was performed and done prior to written authorization*. Therefore, to the extent [Contractor] claims the [Commission's] denial of its request for additional payment was ineffective for failure to observe the supplemental job order process, we disagree.

Board Adjudication at 33 (underlining in original) (emphasis added).

We agree with the Board's analysis. Where uncertainty existed about whether certain work was within the scope of the contract, Contractor was directed to do the work and then submit an invoice. Contractor followed this procedure and received the Commission's agreement to pay the invoice for supplemental work, in part, on September 21, 2016. Notably, in his October 6, 2016, response, Barker did not request a meeting or ask when one would be scheduled. Instead, Barker asked Kleimenhagen to "further review[]" the determination and "contact our office if you have any questions." R.R. 716a.[9]

---

[9] In full, Barker's email response to Kleimenhagen stated:

Attached is our response to the [Commission's] offer for a Supplemental Work Order.

17

Contractor argues that the Commission's actions after September 21, 2016, signaled that the Commission did not make a final determination on that date. Contractor notes that Kleimenhagen took more than a week to respond to Barker's October 6, 2016, email, which implies that another review was conducted. Additionally, when Contractor filed its claim, the Commission held a hearing prior to dismissing it as untimely, which would not have been necessary unless it was uncertain about the meaning of the September 21, 2016, email. Contractor argues that the Board erred in failing to consider these points in determining the date that Contractor's claim accrued.

Contractor's argument lacks merit. The Board credited Kleimenhagen's testimony that he was at a conference in California when Barker sent the October 6, 2016, email, so he did not review it until October 11, 2016. Because of other work, he was not able to respond until October 17, 2016. Simply, Contractor's belief that the lapse of time between the Commission's two emails shows that a second review occurred lacks a foundation in the record. Likewise, nothing can be read into the Commission's holding a hearing on Contractor's claim before it dismissed it as untimely. We agree with the Board on this point.

### III. January 5, 2017, Letter from Commission's Counsel

Finally, Contractor challenges the Board's conclusion that the Commission cleared up any confusion over the date Contractor's claim accrued with

---

[Attachment:] [Contractor] is in receipt of your email dated 9/21/16 with revisions/acceptance of items on our … Submission Breakdown of additional work performed on the above referenced project. We disagree with your proposed approval of $35,233.05 out of $150,925.19 of additional work which was directed by the [Commission] and performed by our firm. We respectfully request that these changes be further reviewed and paid for.

Please feel free to contact our office if you have any questions. Thank you.

R.R. 716a, 722a (emphasis in attachment omitted).

a letter from its general counsel to Contractor's counsel on January 5, 2017. More specifically, the Board concluded that the letter of Commission's counsel

> cleared up any possible confusion engendered by the loose usage of the "supplemental job order" term and indicated that [Contractor's] request for payment was finally denied on the September 21, 2016 date, at the latest.

Board Adjudication at 35.

Contractor argues that the letter from the Commission's counsel did not state that the Commission made and communicated its final determination through Kleimenhagen's email to Barker on September 21, 2016. Further, the letter was confusing because it posited that Contractor's claim could have accrued on several different dates. The Commission responds that the letter expressly disagreed with Contractor's suggestion that it had until April 17, 2017, to file a claim.

To begin, counsel's letter, sent to Contractor's counsel, stated that the Commission

> disagrees with [Contractor's] position as to the present procedural posture of its Claim. Accordingly, we respectfully disagree with your assumption that [Contractor's] Claim is to be filed on or before April 17, 2017.

R.R. 797a. The letter then went on to address several matters, such as the lack of specificity in Contractor's notice of claim and Contractor's assertion that Kleimenhagen's October 17, 2016, email represented the Commission's final determination. The Commission's counsel reasoned that Barker's request for "further review" in his email of October 6, 2016, demonstrated that Contractor understood that its request for payment had been denied on September 21, 2016. The letter challenged Contractor's failure to file a notice of intent to file a claim

19

within ten days of the September 21, 2016, email and questioned why Contractor did not "suggest that its claim is due by March 21, 2017, six (6) months from that earlier and identical determination." R.R. 798a.

We reject Contractor's characterization of the letter as not stating that "the Commission believed that [Contractor's] claim accrued as of September 21, 2016." Contractor Brief at 36. The letter acknowledged Contractor's belief that the October 17, 2016, email constituted the denial of the claim and then explained why that belief was incorrect. The letter stated that the September 21, 2016, email denied Contractor's work costs and established the administrative claim was due by March 21, 2017, *i.e.*, six months from the September 21, 2016 email. There was nothing confusing here. The Commission expressed its position that Contractor's claim accrued on September 21, 2016. Contractor chose to ignore this warning, to its own detriment.[10]

## Conclusion

For all the above reasons, we affirm the order of the Board.[11]

_____
MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

---

[10] Of course, the extra-contractual statement by the Commission's counsel is not dispositive of what the job order contract required of the parties.

[11] Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lobar Associates, Inc.,                    :
                Petitioner        :
                                :
          v.                    :    No. 1038 CD 2018
                                :
Pennsylvania Turnpike Commission,          :
                Respondent       :

## **O R D E R**

        AND NOW, this 1st day of August, 2019 the order of the Board of Claims, dated June 28, 2018, in the above-captioned matter is hereby AFFIRMED.

                                  _____
                                  MARY HANNAH LEAVITT, President Judge